# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 10-1366

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Larry P. Goodyke, | * |
| | * |
| Appellant. | * |

_____

No. 10-1367

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| David L. Robinson, | * |
| | * |
| Appellant. | * |

Appeals from the United States
District Court for the
Western District of Missouri.

_____

Submitted: December 17, 2010
Filed: April 25, 2011

_____

Before RILEY, Chief Judge, BEAM and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

Larry Goodyke and David Robinson appeal their convictions and sentences for conspiracy to produce fraudulent diplomatic identification cards and for wrongfully using the Department of State seal, in violation of 18 U.S.C. §§ 2, 371 and 1017. We affirm.

## I.    BACKGROUND

Goodyke, Robinson, and others who are not involved in this appeal (collectively, "defendants") participated in a scheme whereby they marketed and sold fraudulent "diplomatic immunity" cards. Defendants represented to potential buyers that obtaining the cards would enable purchasers to avoid paying taxes, and would entitle them to immunity from being detained or arrested by law enforcement officers. The cards themselves contained an "apostille" number. An apostille is a document issued by a state government that certifies the legitimacy of a notary stamp on a document and is intended for use in foreign transactions. Defendants obtained most of their apostille numbers from the Kansas Secretary of State's office. The cards bore the seal of the United States Department of State in the lower left corner, said "State of Kansas" on the top, and bore the seal and signature for the Kansas Secretary of State's office. Defendants misrepresented to the buyers that the apostille number gave them authorization to use the United States Department of State seal on the cards. The scheme was discovered when one of the defendants sold such a card to an undercover police officer. At trial, this officer, several other card purchasers, and a co-defendant who pleaded guilty, all testified about the details of the scheme. Evidence at trial indicated that purchasers spent anywhere from $450 to several thousands of dollars on the cards and affiliated products (license plates, metal badges, etc.). The jury returned guilty verdicts on all counts.

At sentencing, as relevant, the district court[1] found that there should be an eight-level enhancement because the loss was greater than $70,000, and a four-level enhancement because there were more than fifty victims. The court also applied a two-level enhancement because defendants misrepresented that they were acting on behalf of a government agency, and applied a two-level obstruction of justice enhancement to Robinson. Robinson was sentenced to seventy-five months' imprisonment and Goodyke to sixty months' imprisonment.

On appeal, Goodyke challenges the sufficiency of the evidence, and both defendants challenge the district court's sentencing findings with regard to amount of loss, number of victims and official agency misrepresentation. Robinson also challenges the district court's imposition of the obstruction of justice enhancement.

## II.    DISCUSSION

### A.    Goodyke's Sufficiency Challenge

We review a challenge to the sufficiency of the evidence deferentially, viewing the evidence in the light most favorable to the jury's verdict, and affirm if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Inman, 558 F.3d 742, 747 (8th Cir. 2009).

To prove a violation of § 1017, the government must prove that Goodyke (1) procured or sold a document; (2) knowing the seal of the United States Department of State had been fraudulently affixed to the document; and (3) did both of the foregoing with fraudulent intent. 18 U.S.C. § 1017. To show a conspiracy, the government must prove an agreement to perform an illegal act, that Goodyke knew

---

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

of the agreement and took steps to become a part of the agreement. United States v. Jenkins-Watts, 574 F.3d 950, 959 (8th Cir. 2009), cert. denied, 130 S. Ct. 1915 (2010).

Viewed in the light most favorable to the jury verdict, there was sufficient evidence on all of the elements of the crimes to support Goodyke's convictions. The jury heard myriad witnesses and viewed numerous emails detailing the scheme, the theory behind the scheme, and the scope of the fraud and the connections between the defendants acting in concert. The jury heard that Goodyke created a copy of the Department of State seal to place on the cards and continually modified the seal and the cards to make them look more legitimate. And, though Goodyke received notice that wrongfully obtaining an apostille and misusing the seal was illegal, he continued to market and sell the cards. Finally, there was evidence that Goodyke drafted documents to explain to potential customers why it was legal for him to use the Department of State seal on the cards. Accordingly, Goodyke cannot establish there was insufficient evidence that he acted with fraudulent intent. Furthermore, there was sufficient evidence that Goodyke entered into an agreement with numerous of his co-defendants to commit this crime. The evidence showed that after receiving his own diplomatic immunity cards and materials in October 2006, Goodyke offered his services to defendants and represented that he had the talent and resources to improve upon the quality of the cards and related products. Numerous communications ensued between Goodyke and the other defendants following his October 2006 entrance into the conspiracy. The voluminous trial transcript is replete with sufficient evidence to support Goodyke's conviction on all counts.

## B. Sentencing

Goodyke and Robinson both challenge the district court's sentencing findings with regard to amount of loss and number of victims, as well as the district court's decision to increase their base offense level because they misrepresented themselves

to be official government agents. We review the district court's application of the Guidelines for clear error, giving deference to the determination based upon the district court's unique position to assess the evidence. United States v. Jenkins, 578 F.3d 745, 749 (8th Cir. 2009), cert. denied, 130 S. Ct. 1550 (2010).

United States Sentencing Guidelines Manual § 2B1.1(b) instructs the district court to increase the base offense level incrementally based upon the amount of loss. A loss of greater than $70,000 increases the base offense by eight levels. U.S.S.G. § 2B1.1(b)(1)(E). The Guidelines further provide that when the number of victims is fifty or more, the court should increase the base offense by four levels. Id. § 2B1.1(b)(2)(B). The district court based its calculations upon the testimony of the purchasers about how much they paid for the cards as well as a spreadsheet seized from Goodyke's computer indicating that at least 100 people had purchased the cards. The same spreadsheet showed that the venture had generated at least $65,000. The government presented additional evidence at both trial and sentencing that individuals not accounted for on Goodyke's spreadsheet sent $9,000 to Goodyke (and then never actually received any cards, according to testimony at trial), placing the loss, for Guidelines purposes, in excess of $70,000.

Defendants focus their appellate arguments on the idea that the purchasers were not "victims" because they either should have known the cards were fraudulent, or, alternatively, that they were happy with the fraudulent cards–in essence, they got what they paid for. Upon review of the trial transcript, this argument is well taken. However, it cannot overcome the district court's factual findings, not clearly erroneous based upon the evidence presented at trial, that there were at least fifty victims and over $70,000 in loss. The people that bought the cards were told that the cards had legal significance that the cards did not, in fact, have. And, one person testified that though he paid Goodyke $9,000, he never did receive any cards. Many of these purchasers were predisposed to the same manner of thinking as Goodyke and Robinson regarding an individual's ability to "opt out" of the federal system. But the

purchasers' predispositions are immaterial to the issue of whether they were also victims of Goodyke and Robinson's scheme to sell fraudulent diplomatic immunity cards. Arguably, the fact that many of the card purchasers honestly believed that they had some sort of immunity by purchasing the cards makes them more compelling "victims," not less.

Defendants next argue the district court erred in applying a two-level enhancement for misrepresenting themselves as government agents. See U.S.S.G. § 2B1.1(b)(8) (providing for a two-level enhancement if the offense involved a misrepresentation that the defendant was acting on behalf of a government agency). Defendants argue that the purchasers knew they were not really government actors, and therefore the enhancement should not apply. However, the district court did not clearly err in applying the enhancement because the result of the scheme was that defendants sold hundreds of cards bearing the seal of the United States Department of State, as well as the seal and signature of the Kansas Secretary of State. Though some of the purchasers knew that defendants were not part of the current United States government, which defendants and their like-minded followers do not believe is legitimate, defendants represented to the purchasers that they symbolized the true sovereign government envisioned by the Founding Fathers of the United States. This is enough evidence to support the enhancement. E.g., United States v. Achiekwelu, 112 F.3d 747, 755 (4th Cir. 1997) (holding that district court properly applied predecessor enhancement to § 2B1.1(b)(8) to a defendant who misrepresented that he was working for the Nigerian Finance Ministry because the guideline "extends to all government agencies, domestic and foreign"). Accordingly, this contention is without merit.

## C.    Robinson's Obstruction Enhancement

Robinson challenges the application of a two-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice imposed because he allegedly took

retaliatory actions against officials investigating the scheme. Robinson argues that the facts underlying the enhancement were not presented at trial, he objected to the inclusion of these facts in the Presentence Investigation Report (PSR), and the government did not adequately prove up the objected to facts at the sentencing hearing. See United States v. Hammer, 3 F.3d 266, 272-73 (8th Cir. 1993) (holding that when a defendant challenges a PSR finding, the government must put on further evidence at the sentencing hearing to prove the basis for the finding). The government first responds that Robinson withdrew his objection to the PSR at the sentencing hearing by not renewing it. Further, the government argues that Robinson obstructed justice during and after trial by filing numerous pro se documents in violation of a district court order. Finally, the government contends that any error in imposing the enhancement was harmless, because the seventy-five-month sentence would still have been within the Guidelines range without the enhancement, and that the district court evinced an intent to impose this sentence, regardless of the base offense level. See, e.g., United States v. Staples, 410 F.3d 484, 492 (8th Cir. 2005) ("An error is harmless if it is clear from the record that the district court would have given the defendant the same sentence regardless of which guidelines range applied.").

In the PSR, there were two factual bases given to support the obstruction enhancement: that some members of the sovereign citizen movement killed the pet of a law enforcement officer in an attempt to intimidate and retaliate against the officer for participation in this case; and that Robinson sent numerous pro se documents to officials prior to trial in an attempt to intimidate or retaliate against the officials. Robinson made a written objection to the factual assertions regarding the killed pet, arguing that there was no evidence that he took such actions. With regard to the filings, Robinson's written objection took issue with labeling the documents as pro se, and instead characterized the filings as follows: "defendant, through his agent, submitted or attempted to submit certain documents to the U.S. Attorney's Office and the U.S. Marshal's Office in a misguided effort to put those entities on notice of

certain actions and consequences *that cannot legally be put into effect*." (emphasis in original). Robinson went on to challenge the legal application of the obstruction Guideline to those facts, arguing that submitting these documents was not the kind of conduct that is covered by U.S.S.G. § 3C1.1.

We agree with Robinson that the district court could not have based the obstruction enhancement on the conduct involving the law enforcement official's pet. Robinson objected to this PSR fact, and despite the government's arguments, we find that Robinson, having properly raised the objections in writing, did not waive them at the sentencing hearing. The government did not put on any evidence to support these factual allegations at the sentencing hearing, and therefore, the allegations were not a proper basis for the obstruction enhancement. United States v. Replogle, 628 F.3d 1026, 1029 (8th Cir. 2011). However, Robinson did not object to the factual allegations regarding the documents submitted to the United States Attorney and Marshal, and in fact admitted doing so. Robinson merely objected "to the PSR's application of the guidelines to the facts." Id. Under those circumstances, the district court could properly consider those facts when applying the enhancement. And we agree that this pretrial conduct meets the requirement for application of the obstruction enhancement. See United States v. James, 328 F.3d 953, 956-57 (7th Cir. 2003) (obstruction-of-justice enhancement authorized where defendant made unsuccessful attempt to intimidate judge, prosecutor, witnesses, and court personnel by mailing copies of "contracts" requiring them to pay $500,000 for use of his name); cf. United States v. Beale, 620 F.3d 856, 865 (8th Cir. 2010) (holding there was sufficient evidence to support convictions on the substantive offense for obstruction of justice by improperly influencing an officer of the court under 18 U.S.C. § 1503 where defendants served subpoenas and "arrest warrants" on, and "liens" against, a federal district court judge involved in the defendant's tax evasion case), cert. denied, 131 S. Ct. 1023 (2011).

Furthermore, we agree with the government that even if the district court did commit a procedural error in applying the obstruction enhancement, such error was harmless in this case. That the district court wanted to get to a seventy-five-month sentence is fairly obvious from the transcript. Despite the advisory Guidelines range of 97 to 121 months, the government recommended a sentence of sixty months. The district court, after noting the Guidelines range, initially sentenced Robinson to seventy-five months on count I, concurrent with sixty-month sentences on all of the remaining counts. When advised by the government that the statutory maximum for each count was sixty months, the court decided to make two of the sixty-month sentences consecutive, for a total sentence of 120 months. When the defense objected to the substantial increase from the court's initial sentencing decision, the district court relented and sentenced Robinson to sixty months on Count 1, consecutive to a fifteen-month sentence on Count III. In other words, it appears from the record that regardless of the Guidelines range and the recommendations of the parties, seventy-five months was the sentence that the district court was going to impose. Under these circumstances, we find any procedural error committed by the district court to be harmless error. United States v. Ortiz, No. 10-1101, 2011 WL 1345098 at *6 (8th Cir. April 11, 2011) ("Under the circumstances of this case, there is no doubt the district court would have imposed the same sentence, and for the same reasons, regardless of any procedural error it may have made . . . .").

## III. CONCLUSION

We affirm the district court.

_____