# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 10-2112 & 10-2265

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee/Cross Appellant, | * | |
| | * | On Appeal from the United |
| v. | * | States District Court |
| | * | for the District of Minnesota. |
| | * | |
| Steven Mark Renner, | * | |
| | * | |
| Appellant/Cross Appellee. | * | |

_____

Submitted: February 18, 2011
Filed: August 8, 2011

_____

Before WOLLMAN and BYE, Circuit Judges, and FLEISSIG,[1] District Judge.

_____

FLEISSIG, District Judge.

A jury found Steven Mark Renner guilty of four counts of tax evasion, in violation of 18 U.S.C. §7201, and the district court[2] sentenced him to 18 months'

_____

[1] The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri, sitting by designation.

[2] The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

imprisonment. Renner appeals his convictions, arguing that the government constructively amended the indictment through the evidence presented at trial; the instructions erroneously defined "taxable income" and "good faith"; and the evidence was insufficient to support his convictions. The United States appeals Renner's sentence, contending that the district court erroneously relied on a fact rejected by the jury in imposing a sentence below the applicable Sentencing Guidelines range. We affirm.

## I. Background

The superseding indictment, returned on January 13, 2009, charged Renner with four counts of tax evasion for tax years 2002, 2003, 2004, and 2005. The indictment alleged that in these four years, Renner underreported his income by at least $1.4 million, resulting in at least $332,000 in tax due and owing. The indictment specified that the amounts of underreported income represented monies that Renner had "diverted . . . from [CCI]" and used for personal living expenditures; personal investments "in coins, oil wells, art, stamps, and vintage musical instruments"; and to promote his musical band.

CCI was an Internet company that marketed stored-value debit cards. Renner originally envisioned the company as a means for Internet businesses to pay commissions to its sales affiliates. Customers of CCI purchased "V-credits" by sending funds to CCI. The V-credits were convertible into an equivalent amount of United States currency that could be loaded onto cards that were used as ATM cards, through which the customers could make withdrawals. The V-credits could also be used as on-line currency to make purchases over the Internet from certain vendors. CCI charged its customers fees to deposit funds and to conduct transactions.

While CCI reserved the right to place a daily limit on the amount of funds that could be withdrawn and the number of transfers made, both the customer and CCI retained the right to close the customer's account, at which time CCI promised to mail

the customer a check for any funds remaining in the account. The agreement between CCI and its customers did not otherwise place any limit on CCI's use of the funds for investing or other purposes. Renner initially formed CCI as a corporation, but in March 2001, converted it to a single-member LLC.

On March 1, 2006, the IRS executed search warrants at Renner's home and business. At that point in time, he had not filed tax returns for the four years at issue, but had been working on the returns with a tax accountant. On March 2, 2006, the day after the warrants were executed, Renner filed returns for these years. Each of the returns showed that CCI had lost money, and that Renner had no other source of income, and therefore no tax due and payable. In those same years, Renner spent substantial monies on personal living expenses, on purchases of items, including a condominium, for personal use, and on investments in items of personal interest. Renner's accountant testified that the returns in question were inaccurate and that he had so advised Renner.

The government also presented evidence that in October 2009, three weeks before the trial began, Renner had his accountant draw up a promissory note between CCI and Renner, pursuant to which Renner promised to repay to CCI money he had taken from it, with the first payment due on the second day of trial. There was no other evidence of a loan agreement between Renner and CCI or its customers.

At the trial, the jury was instructed that a single-member LLC is a "disregarded entity" under the Internal Revenue Code, meaning that for federal income tax purposes, the LLC is not distinguished from the individual taxpayer who owns it. Income from the LLC is attributable to the individual taxpayer, and the LLC does not file its own separate tax return. The government made clear at trial that it considered the income on which tax had been evaded to have come into Renner's hands through his taking it from CCI's customers, with no intent to repay them. At the close of the

government's evidence, Renner filed a motion for judgment of acquittal, which the district court denied.

Renner's defense at trial was that no tax liability had accrued, and that he had relied in good faith on the advice of his accountant and tax attorney. He testified about serious personal and medical difficulties during the relevant time period when the tax returns were due, that he employed professionals to prepare the tax returns at issue in the case, and that he relied upon their advice. Renner's tax attorney testified, in turn, that he advised Renner in preparation of the returns in question and that the returns were substantially true and correct. According to Renner's tax attorney, the money Renner took from CCI was not income, but rather a debt he had to repay, and thus did not have to be reported as income for tax purposes until such time as the funds were demanded by customers of CCI and Renner was unable to repay them. The tax attorney testified, however, that if the money had been stolen, rather than borrowed, "that might become a different sort of transaction. . . . But in this case, that wasn't the case." Renner's tax attorney stood by this position in a letter written to the court on Renner's behalf in support of a "minimal sentence," after the jury returned its verdict.

At sentencing, the district court found an offense level of 22 based on a tax loss of approximately $1.13 million. The government advocated for a guidelines sentence of 46 to 57 months. The court found that Renner's Criminal History Category of II overrepresented the seriousness of his past behavior, and adjusted the Criminal History Category to I.[3] The advisory Guidelines range for a tax loss of one million to two and a half million dollars and Criminal History Category I was 41 to 51 months. The district court granted Renner a downward variance and sentenced him to 18 months' imprisonment, three years of supervised release, and a fine of $7,500. The government did not seek, and the district court did not order, any restitution.

---

[3] The parties do not appeal either the calculation of the loss amount or the downward adjustment of Renner's Criminal History Category.

At the sentencing hearing, the district court repeatedly mentioned the letter sent to the court by Renner's tax attorney, and based its variance, in part, on the fact that Renner had consulted with a tax attorney and accountant before filing the tax returns in question. The court also noted that the amount of tax loss was at the low end for the applicable loss bracket, the letters on Renner's behalf that the court had received, and Renner's family support.

## II. Discussion
### A. Constructive Amendment of the Indictment

Renner first argues that the government constructively amended the indictment, in violation of his Fifth Amendment rights, by trying the case as a case of fraud on CCI's customers. He asserts that although there was no specific objection by defense counsel at trial, the prejudice of this error is presumed and his convictions cannot stand. The government counters that Renner's argument is essentially a claim that there was a variance between the indictment and the proof at trial, and that in any event, there was neither a constructive amendment nor a variance because the indictment charged, and the evidence at trial proved, that Renner had taken money from CCI and its customers and then evaded the payment of tax on that money.

"A constructive amendment occurs when the essential elements of the offense as charged in the indictment are altered in such a manner -- often through the evidence introduced at trial or the jury instruction -- that the jury is allowed to convict the defendant of an offense different from or in addition to the offenses charged in the indictment." *United States v. Whirlwind Soldier*, 499 F.3d 862, 870 (8th Cir. 2007); *see also Stirone v. United States*, 361 U.S. 212, 217-19 (1960). The difference between a constructive amendment of, and a variance to, an indictment

> is well established, though at times difficult to apply: "a constructive amendment changes the charge, while the evidence remains the same; a variance changes the evidence, while the charge remains the same." A constructive amendment primarily affects the defendant's Fifth

-5-

Amendment right to indictment by a grand jury and constitutes reversible error per se, while a variance implicates the defendant's Sixth Amendment right to notice of the nature of the charge and is subject to harmless error analysis.

*United States v. Adams*, 604 F.3d 596, 599 (8th Cir. 2010) (quoting *United States v. Stuckey*, 220 F.3d 976, 981 (8th Cir. 2000)).

Upon de novo review of the record, we conclude that neither a constructive amendment nor a variance occurred here. The government's proof at trial and the jury instructions corresponded with the course of conduct charged in the indictment. The evidence showed that Renner diverted funds from CCI for his own personal purposes, with no intention to repay them. The funds diverted were primarily the funds deposited by customers. Fees paid by customers amounted to only approximately three percent of gross receipts. Renner also had fair notice of the government's theory, and there was no danger that the jury might consider other, uncharged incidents in convicting him. *See, e.g., United States v. Redzic*, 627 F.3d 683, 691 (8th Cir. 2010) (rejecting the defendant's argument that convicting him on an honest-services theory amounted to a constructive amendment or variance, where the indictment charged defrauding the state of property, not a violation of honest services).

### B. Jury Instructions

Renner next argues that the jury instructions erroneously defined "taxable income" and "good faith." When reviewing jury instructions, this Court evaluates "whether the instructions, taken as a whole, and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." *United States v. Beckman*, 222 F.3d 512, 520 (8th Cir. 2000). "[A]lthough district courts exercise wide discretion in *formulating* jury instructions, when the refusal of a proffered instruction simultaneously denies a legal defense, the correct standard of review is de novo." *United States v. Young*, 613 F.3d 735, 744 (8th Cir. 2010).

The district court instructed the jury regarding taxable income as follows:

Defendant Renner . . . was required to file a tax return disclosing as taxable income all income that CCI earned and all income that Defendant Renner himself earned.

The Defendant was required to pay federal income taxes on all of his taxable income. Defendant Renner's taxable income does not automatically include all funds received from CCI's customers. Taxable income would not include funds received from CCI's customers that CCI then invested for the purpose of producing income for CCI.

But taxable income would include funds that Defendant Renner acquired from CCI in the form of a purported loan if, at the time Defendant Renner obtained the loan, he had no intention of repaying it. Taxable income also includes funds of CCI that Defendant Renner simply diverted from CCI for his own personal use, such as paying personal expenses or financing personal endeavors.

Renner argues that this instruction was an error of law as it instructed the jury that if Renner accessed the funds on deposit with CCI, this constituted his income *unless* used for a legitimate business purpose. According to Renner, the instruction disregarded the principle of tax law that the customers' deposits remained a liability owed to them, regardless of how the funds were spent, and were therefore not income to Renner.

Renner's argument lacks merit. Taken as a whole, the instructions "fairly and adequately submitted the issues in the case to the jury." *See United States v. Beckman*, 222 F.3d 512, 520 (8th Cir. 2000) (standard). The challenged instruction also adequately sets forth the principle that stolen funds are included in gross income for federal income tax purposes in the year(s) in which they are misappropriated, where the embezzler receives an economic benefit, under the normal principles of income taxation. *See James v. United States*, 366 U.S. 213, 219-20 (1961).

With regard to the instruction on "good faith," Renner argues that the district court erroneously rejected defense counsel's request to include the language, "good faith does not need to be objectively reasonable." On the question of Renner's good faith, the district court instructed the jury as follows:

> If defendant Renner before taking any action sought the advice of an attorney or tax preparer whom he considered competent in good faith, and for the purpose of securing advice in the lawfulness of his possible future conduct and made a full and accurate report to his attorney or tax preparer of all material facts, of which he has the means and knowledge, and he acted strictly in accordance with the advice of his attorney or tax preparer given following his full report to them, then the defendant Steven Renner would not be willfully doing wrong in doing something the law forbids, as that term is used in my instructions.
>
> Whether the defendant Steve Renner acted in good faith for the purpose of seeking guidance as to questions about which he was in doubt and whether he made a full and complete report to his attorney or tax preparer, and whether he acted strictly in accordance with the advice he received, are questions for you, the jury, to decide.
>
> *   *   *
>
> One of the issues in this case is whether the defendant acted in good faith.
>
> While the term good faith has no precise definition, it means among other things, an honest belief, a lack of malice, and the intent to perform all lawful obligations. A person who acts on the belief or an opinion honestly held is not punishable under that belief merely because that honest belief turns out to be incorrect or wrong. It is a subjective, rather than an objective standard in evaluating whether defendant Renner acted in good faith. The tax laws subject to criminal punishment only those who willfully attempt to evade or defeat tax.

Upon de novo review, we conclude that the district court's formulation of the instructions did not deprive Renner of a good-faith defense. The instructions told the

jury that they must acquit Renner if he acted in good faith, explaining that good faith was "honest" and "sincere" behavior. Moreover, here, the court told the jury that whether Renner acted in good faith was a subjective, rather than an objective standard. Thus, the district court did not equate for the jury good faith with reasonableness. *See United States v. Willis*, 277 F.3d 1026, 1032 (8th Cir. 2002) (holding that the district court did not abuse its discretion in instructing the jury in a tax evasion case that good faith encompassed a belief or opinion honestly held, even though the court declined to include the defendant's requested language that the jury should acquit the defendant even if his belief that his actions were lawful was unreasonable). Although in *Willis*, the Court reviewed the good-faith instruction in question under an abuse of discretion standard, we conclude that the instructions in question here were adequate under de novo review. Significantly, the district court included an explanation that a subjective standard applied. In sum, we conclude that the jury was properly instructed, and Renner's arguments to the contrary are rejected.

## C. Sufficiency of the Evidence

Renner argues that the government did not establish the existence of tax liability, because the funds at issue constituted a debt, not income. He further contends that the government did not establish willfulness, because Renner relied upon the advice of counsel in good faith, or because the tax consequences of the transactions were at the least, subject to debate. Accordingly, Renner argues, his motion for judgment of acquittal should have been granted.

This Court reviews de novo a district court's denial of a motion for judgment of acquittal. *United States v. Hively*, 437 F.3d 752, 760 (8th Cir. 2006). "We review a challenge to the sufficiency of the evidence deferentially, viewing the evidence in the light most favorable to the jury's verdict, and affirm if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Goodyke*, 639 F.3d 869, 872 (8th Cir. 2011). "The standard of review concerning sufficiency of the evidence is very strict, and a jury verdict will not

-9-

be overturned lightly." *United States v. Morse*, 613 F.3d 787, 794 (8th Cir. 2010) (quoting another source). "We do not weigh the evidence or assess the credibility of the witnesses. The jury has the responsibility of resolving conflicts or contradictions in testimony, and we resolve any credibility issues in favor of the verdict." *United States v. Ali*, 616 F.3d 745, 755 (8th Cir. 2010).

Here, viewed in the light most favorable to the jury verdict, there was sufficient evidence on all of the elements of the crimes to support Renner's convictions. "The elements of tax evasion are willfulness, the existence of a tax deficiency, and an affirmative act constituting evasion or attempted evasion of the tax." *United States v. Beale*, 574 F.3d 512, 517 (8th Cir. 2009). "Willfulness requires proof of a voluntary, intentional violation of a known legal duty. 'The issue is whether, based on all the evidence, the [g]overnment has proved that [the defendant] was aware of the duty at issue, which cannot be true if the jury credits a good-faith misunderstanding and belief submission, whether or not the claimed belief or misunderstanding is objectively reasonable.'" *Morse*, 613 F.3d at 794 (quoting *Cheek v. United States*, 498 U.S. 192, 201 (1991)); *see also United States v. Barker*, 556 F.3d 682, 687 (8th Cir. 2009) ("[W]here a defendant seeks to defeat a finding of willfulness through a 'good-faith belief that he was not violating any of the provisions of the tax laws, the issue is whether, based on all the evidence, the Government has proved that the defendant was aware of the duty at issue'.") (quoting *Cheek*, 498 U.S. 201-02).

We conclude that there was sufficient evidence for the jury to believe that Renner had diverted funds from CCI and otherwise used its funds to purchase personal items and cover personal living expenses. There was also evidence from which a jury could conclude that Renner did not have an intention to repay the money, thus establishing a tax liability. There is no dispute that Renner did not pay income tax on these amounts.

-10-

The jury was also entitled to reject Renner's good-faith defense. From the testimony of Renner's accountant alone, the jury reasonably could have believed that Renner knew that the returns were wholly inaccurate. Further, that Renner prepared a promissory note on the eve of trial, supports a finding of willfulness and an active attempt to evade tax liability. Based on the testimony of the witnesses, a rational trier of fact could have found beyond a reasonable doubt that Renner had no intention of repaying the funds diverted to CCI and that he voluntarily and intentionally filed false tax returns. We decline to invade this realm of fact-finding left to the jury.

### D. The Sentence

The government argues that the case must be remanded for resentencing because the district court abused its discretion as a matter of law, and thereby imposed an unreasonably lenient sentence, by granting a downwards variance from the Advisory Guidelines range of 41 to 51 months based on a fact -- good-faith reliance upon expert advice -- considered and rejected by the jury.

"When we review the imposition of sentences, whether inside or outside the Guidelines range, we apply a deferential abuse-of-discretion standard." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). In reviewing the sentence, the appellate court must first ensure that the district court "committed no significant procedural error," such as "selecting a sentence based on clearly erroneous facts"; and must then consider the sentence's "substantive "reasonableness" under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). In reviewing the reasonableness of a sentence outside the Guidelines range, the reviewing court must take into account the totality of the circumstances, including the extent of the variance, but must give due deference to the district court's decision that the 18 U.S.C. § 3553(a) factors justify the variance. *Id.*

It is, however, "improper for the judge in sentencing to rely on facts directly inconsistent with those found by the jury beyond a reasonable doubt." *United States*

*v. Bertling*, 611 F.3d 477, 481 (8th Cir. 2010) (holding that the non-contradiction principle survived *United States v. Booker*, 543 U.S. 220 (2005)). Although a close question is presented, we believe the district court's sentence was not based on facts that contravened the jury's verdict. From the sentencing transcript it is clear that the district court fully accepted the jury's rejection of the good-faith defense, and the district court did not find otherwise. Rather, among the factors considered, the district court relied on the fact that Renner did consult with professionals, a fact the court believed distinguished Renner from other tax evaders who made no effort whatsoever to seek professional advice. The district court was entitled to consider that Renner at least consulted tax professionals, even if the jury did not believe that Renner met all of the requirements for a good-faith defense.

Our review of the sentencing transcript convinces us that the district court did not commit a procedural error, and that the sentence was substantively reasonable.

## IV. Conclusion

The judgment of the district court is affirmed.

_____