# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3387

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Craig Leslie Anderson, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: October 18, 2011
Filed:  March 16, 2012

_____

Before MELLOY, BEAM, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

A jury found Defendant-Appellant Craig Leslie Anderson guilty of being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  In calculating the advisory Guidelines range, the district court[1] applied an enhancement based upon perjury.  The district court then applied a traditional departure based upon an overstated criminal history.  The court also granted a

_____

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

downward variance from the adjusted advisory Guidelines range and imposed a sentence of 45 months' imprisonment.

Anderson appeals, challenging the denial of a suppression motion. He also argues his trial was infected with prosecutorial misconduct, the evidence was insufficient to support his conviction, his advisory Guidelines range was erroneously enhanced for perjury, and his overall sentence is substantively unreasonable. We affirm.

I.

Anderson was convicted in Minnesota state court of a felony offense for making terroristic threats. After serving a term of state incarceration, he was released subject to parole and was assigned to a state parole agent. The state's conditions of release prohibited possession of a firearm or dangerous weapon and also required that he "submit at any time to an unannounced visit and/or search of [his] person, vehicle, or premises by [his parole agent or her designee]." Although federal law prohibited his possession of ammunition, the conditions of release given to Anderson by Minnesota did not specifically state that he could not possess ammunition.

A few months after Anderson's release from state incarceration, he was stopped by an officer for speeding and for "suspicious driving behavior." According to the officer, Anderson claimed to be hunting. The officer relayed information concerning the stop to Anderson's parole officer. The parole officer then secured an arrest warrant for Anderson. In the affidavit to support the warrant, the parole officer relayed the officer's information. In addition, she described a report of Anderson talking at a bar about paperwork related to his family's home and stating that if he did not receive the paperwork, he was going to show up armed and go out "in a blaze of glory."

Execution of the arrest warrant occurred at a motel room Anderson was renting as his residence. After his arrest, Anderson initially denied consent to search his room. Police officers and the parole officer then discussed conducting a search pursuant to the search provisions of Anderson's state conditions of release. Before conducting such a search, however, an officer reported that Anderson had changed his mind and granted consent. Officers again spoke to Anderson, and Anderson stated, "As long as I get to see my arrest warrant, you can go ahead and search. There's no weapons in there." The officer who conducted the resulting search later testified that he was searching for items that "would be of an illegal nature, or parole violation, firearms, anything related to firearms and so on." In conducting the search, the officer found five shotgun shells in a blaze orange hunting vest that was hanging in a closet. The officer stated it was unnecessary to open a pocket of the vest to identify the shells and that it would have been impossible for anyone handling the vest to not recognize that it held shells.

At a parole revocation hearing a few weeks after the search, Anderson answered the following questions:

Q.     So what about the shotgun ammunition that was found in your—

A.     It's a red herring, because when I got out of prison all of my things were in storage, and I had all of my cold weather gear in one box, my—my boots, my long underwear, all—basically what it was, is all of my duck hunting stuff which I'd had for—you know, had for forever, and in that box happened to be a vest with my—my orange vest, and it had some shotgun shells in it which had been left over, I might add, when the—when the police had originally come to our house in this raid back in 2005 claiming that I was a felon in possession of a firearm, wrongfully so. They confiscated everything except those five shells in my vest, and the vest just went into a box.

When I pulled it out when I was in the motel room there, there they were, and I didn't think anything about it. I knew it wasn't illegal. It wasn't a—it wasn't a violation of my probation. It wasn't anything. It was just a—it's just a red herring. It's—

Q.   So you're saying that the shotgun shells were in your coat in the box?

A.   No. They were in a blaze orange vest where they belonged.

Q.   In a box?

A.   No.

Q.   Okay.

A.   They're—they're in the shell compartment . . . .

Before trial, Anderson moved to suppress the fruits of the search. The district court denied the motion on two separate grounds: (1) reasonable officers would have interpreted Anderson's consent as authorization for a general search, and (2) even if the consent authorized merely a search for weapons, "a search through clothing hanging in a closet would be within the scope of such consent."[2]

Also prior to trial, the court and the parties discussed the possibility of asking Anderson about prior state charges that the state had brought against him but subsequently dropped. The charges alleged financial fraud by Anderson involving his misuse of a power of attorney regarding his elderly parents. It was not known at the time of this pre-trial discussion whether Anderson would testify, and the district

---

[2]Overruling Anderson's objections and adopting the Report and Recommendation of Franklin L. Noel, United States Magistrate Judge for the District of Minnesota.

-4-

court instructed that, if Anderson chose to testify, the government should request a sidebar before asking any questions regarding the topic of fraud charges.

Anderson elected to testify at his trial. He asserted that he had no knowledge that the shells were in the vest. Anderson also testified that there were two blaze orange vests and one brown vest. The searching officer, however, testified that there was only one vest, it was blaze orange, and it held the ammunition. The government introduced Anderson's inconsistent testimony from the parole revocation hearing into evidence at trial without objection.

On cross examination, the government asked Anderson about the financial fraud charges without first requesting a sidebar. The Court then called the attorneys to the bench and stated that it did not remember admitting evidence of prior convictions or accusations. Neither attorney reminded the court at that time of its pre-trial instruction to the government to request a sidebar in advance of broaching the topic, and defense counsel made no objection prior to the court's *sua sponte* sidebar.

The court determined that the government could ask Anderson what he was accused of doing. The government did so, and Anderson became angry, demanded an apology from the Assistant United States Attorney, and terminated his testimony. It was near the end of the day, so, after admonishing Anderson, the court dismissed the jury for the day.

The following morning, counsel and the court discussed how to handle the situation. The court asked defense counsel if she desired a curative instruction. Defense counsel declined, stating, "I did have a chance to talk to [the government]. At this point, instead of highlighting it, we're going to move on. He is going to ask one additional question and we will leave it at that." Testimony resumed that morning with the following unrebutted brief exchange before moving on to other topics:

Q. Mr. Anderson, when we left off yesterday, I was asking you a question about financial fraud. Sir, how was that matter resolved?

A. First of all, I would like to apologize to you and to the jury because it's a very emotional issue for me.

I was exonerated and the charges were dismissed.

The jury later returned a verdict of guilty. At sentencing, the district court pointed to Anderson's trial testimony denying knowledge of the ammunition and to Anderson's testimony under oath at his state parole-revocation hearing. As quoted above, Anderson in that earlier testimony admitted that he saw the ammunition when unpacking the box. The court also pointed to the searching officer's testimony that it would have been impossible for anyone not to recognize that the vest held ammunition. Concluding that Anderson had perjured himself at trial, the district court applied a two-level enhancement to Anderson's offense level pursuant to United States Sentencing Guidelines § 3C1.1, resulting in an adjusted advisory Guidelines range of 84–105 months. The court then determined that a traditional departure was appropriate based on overstated criminal history pursuant to U.S.S.G. § 4A1.3(b), and adjusted the advisory Guidelines range downward to 77–96 months. Finally, the court granted a variance and imposed a sentence of 45 months' incarceration.

In the statement of reasons for the sentence, the district court explained:

Because I granted Mr. Anderson's motion for a downward departure under § 4A1.3(b), the starting point and the initial benchmark here is 77–96 months. After considering each of the § 3553(a) factors, I believe that this range is greater than necessary to serve the purposes of sentencing and that a sentence of 45 months is warranted in this case.

Mr. Anderson's crime is among the least serious felon-in-possession offenses that I have seen. Mr. Anderson possessed old hunting

ammunition that appears to have been inadvertently overlooked when law-enforcement officers confiscated his firearms and ammunition in 2005. There is no evidence that Mr. Anderson could have used, or intended to use, the ammunition. I am not aware of any evidence that Mr. Anderson possessed a gun or any hunting gear. Although I believe that the jury was correct in finding that Mr. Anderson knowingly possessed the ammunition, under the circumstances of this case, Mr. Anderson's possession can fairly be described as inadvertent.

I also believe Mr. Anderson when he says that he did not know that his possession of the ammunition was illegal. Ordinarily, I would not find this a particularly compelling reason to vary from the Guidelines. Under the circumstances of this case, however, I think it deserves some consideration. The State of Minnesota specifically warns felony-level probationers that they may not possess firearms, but the State does not warn that they may not possess ammunition. There are logical reasons for this that have to do with the difference between state and federal law as well as the difference between criminal laws versus conditions of probation. But these types of distinctions may be difficult for a layperson to appreciate. It would be easy for the State to simply warn probationers that, in addition to firearms, they are also not allowed to possess ammunition, and it is understandable that a layperson could be misled by the State's failure to do so.

None of this is to say that Mr. Anderson did not commit a crime or that the State is at fault for his crime. But I do believe that, if Mr. Anderson had known that he could not possess ammunition, he may not be in the situation that he is in today. For these reasons, I believe that the Guidelines range in this case is too high to serve the purposes of sentencing and that a downward variance is warranted.

II.

Anderson first challenges the denial of his suppression motion, arguing in broad strokes that the search of his room was constitutionally unreasonable. "In considering the denial of a motion to suppress, we review the district court's factual

findings for clear error and its legal conclusions *de novo*." United States v. Kelley, 652 F.3d 915, 917 (8th Cir. 2011). Anderson appears to allege that the search was unreasonable because it was an abuse of the search provisions of his state conditions of release. We need not address any such issue. The district court determined the search was a valid consent search and expressly declined to decide whether the consent provisions governing his parole separately justified the search.

To the extent Anderson challenges any aspect of the consent determination, we reject his challenge.[3] Even assuming a reasonable officer would have interpreted the consent as limited in scope to a search for firearms, the search was within the scope of such consent. United States v. Dinwiddie, 618 F.3d 821, 831 (8th Cir. 2010) ("The scope of consent for a search is limited to what a reasonable person would have understood by the exchange between the investigating officer and the person to be searched."). Firearms easily could be located in clothing hanging in a closet, particularly in outerwear such as a coat, jacket, or vest, and most particularly in a blaze orange hunting vest. See United States v. Lopez-Mendoza, 601 F.3d 861, 867 (8th Cir. 2010) ("The scope of a search is generally defined by its expressed object . . . ."). Further, the testimony supports the conclusion that the searching officer identified the ammunition without delving into spaces, pockets, or containers smaller than might hold a firearm.

Anderson next argues his trial was infected with prosecutorial misconduct because the government ignored the court's pre-trial instruction to request a sidebar before asking about state charges alleging financial fraud. Anderson argues this misconduct was prejudicial because it elicited an emotional outburst from him in

---

[3] Anderson makes reference to a substantial "SWAT"-type police presence at the execution of the arrest warrant as if to suggest his consent might have been involuntary. He does not develop any such argument, however, and the record as presented on appeal would not support such an argument.

front of the jury and because the subject matter at issue—financial fraud—detracted from his credibility.

Anderson concedes that our review of his prosecutorial misconduct claim is limited to review for plain error.[4] We may grant relief pursuant to the plain error standard only when we find an error that is "clear under current law," prejudicial, and "seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Delgado, 653 F.3d 729, 735 (8th Cir. 2011). Here, even assuming an error that is clear under current law, we cannot say with any certainty that the events that unfolded in front of the jury caused prejudice to Anderson. Although the government's question elicited an emotional outburst from Anderson and informed the jury that Anderson had been accused of financial fraud, Anderson ultimately apologized to the jury and was permitted to state without rebuttal that he was "exonerated" and that the charges were dismissed. This overall scenario of arguable overreaching by the government could just as easily have caused the jury to form an unfavorable view of the prosecution as a negative view of the defendant. The word exonerated suggests that Anderson was vindicated as to the referenced matter and that he did not merely escape conviction on a technicality. In any event, even if we could conclude with confidence that the episode harmed rather than helped Anderson,

_____

[4]Anderson arguably waived the right to challenge the government's actions at all when his counsel declined a curative instruction and agreed to permit the follow-up question and answer on the subsequent morning of trial. As we noted recently, "The Supreme Court has distinguished between a right that is inadvertently left unasserted and one that is intentionally relinquished or abandoned, noting that the latter constitutes a waiver that extinguishes a claim altogether. 'While forfeited claims are subject to appellate review under the plain error standard, waived claims are unreviewable on appeal.'" United States v. Jones, 662 F.3d 1018, 1027 (8th Cir. 2011) (quoting United States v. Booker, 576 F.3d 506, 511 (8th Cir. 2009) (other citations omitted)). We elect not to treat the issue as waived in this instance given the court's *sua sponte* side bar, the after-the-fact nature of Anderson's consent to a course of action, and Anderson's own reaction to the questions on the first day of trial.

nothing about the alleged error can be seen as affecting "the fairness, integrity or public reputation of judicial proceedings" themselves. Id.

Anderson next challenges the sufficiency of the evidence to support his conviction. "'We review a challenge to the sufficiency of the evidence deferentially . . . and affirm if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Augustine, 663 F.3d 367, 373 (8th Cir. 2011) (quoting United States v. Goodyke, 639 F.3d 869, 872 (8th Cir. 2011)). Anderson challenges only the sufficiency of the evidence to prove that he *knowingly* possessed the ammunition. Testimony from the searching officer at trial as well as Anderson's testimony under oath at his parole hearing sufficiently support the jury's determination that Anderson knowingly possessed the ammunition. The searching officer stated anyone handling the vest had to have known it held ammunition, Anderson admitting handling the vest, he admitting seeing the ammunition, and he even stated the ammunition was in the "shell compartment" of the vest. The jury was not required to accept Anderson's conflicting testimony at trial in which he denied knowledge and attempted to explain his statements from the revocation hearing. To the extent Anderson asserts he was unaware that the possession of ammunition was illegal, his assertions are immaterial to proof of the elements of the offense.

Anderson next challenges application of the perjury enhancement to determine his advisory Guidelines range. We review factual findings at sentencing only for clear error and interpretation of the Guidelines *de novo*. Augustine, 663 F.3d at 374. Here, the district court's factual finding of perjury involved no error. Anderson made conflicting statements under oath at his parole revocation hearing and at trial regarding his knowledge that the ammunition was in the orange vest. The district court's credibility determination is "virtually unreviewable," United States v. Garcia, 512 F.3d 1004, 1006 (8th Cir. 2008), and the finding that Anderson perjured himself

at trial is supported by the court's credibility assessment. Further, the searching officer's testimony was consistent with the district court's finding.

Finally, Anderson challenges the overall sentence he received as substantively unreasonable. We review the "'substantive reasonableness of the sentence imposed under an abuse-of-discretion standard . . . , tak[ing] into account the totality of the circumstances, including the extent of any variance from the Guidelines range.'" United States v. Hill, 552 F.3d 686, 690 (8th Cir. 2009) (alterations in original) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)). Here, the district court carefully considered the § 3553(a) factors (including the advisory Guidelines range that already reflected a traditional departure) and provided a detailed and compelling explanation for why it believed the variance granted was appropriate in Anderson's case. We find no abuse of discretion.

We affirm the judgment of the district court.

_____