# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

───────────

No. 08-3425

───────────

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * District of Minnesota. |
| Kevin J. Morse, | * |
| | * |
| Defendant - Appellant. | * |

───────────

Submitted: June 10, 2009
Filed: July 23, 2010

───────────

Before COLLOTON, JOHN R. GIBSON, and BEAM, Circuit Judges.

───────────

JOHN R. GIBSON, Circuit Judge.

Kevin J. Morse was indicted on five counts of filing false tax documents pursuant to 26 U.S.C. § 7206(1), and a jury returned guilty verdicts on each count. Morse appeals his convictions on several grounds. He first argues that the district court[1] erred by failing to dismiss the indictment based on theories of estoppel and a due process violation. He also alleges that the court violated his constitutional rights by refusing to provide him with a copy of the signed indictment. In addition, he argues that insufficient evidence was introduced at trial to convict him and that the

───────────

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

court abused its discretion by improperly excluding evidence. Finally, he asserts that the district court did not use the correct loss calculations in sentencing him under the Guidelines. We affirm.

I.

Kevin J. Morse is a farmer. In 1999, he was convicted of four counts of filing false tax returns for the years 1991 through 1994 and sentenced to eighteen months' imprisonment and a year of supervised release. Despite these convictions, Morse did not timely file the tax returns for the years 1996 through 2000, the years at issue in this case.

In 2001, Morse hired Ron Urbanski, a former Internal Revenue Service (IRS) criminal investigator and revenue agent, to prepare his tax returns for the years 1996 through 2000. Morse's income consisted of profit on grain sales, the proceeds from renting land to other farmers, rental income from a house, and government agriculture subsidies. Urbanski listed Morse's income on lines 17 and 18 of each year's federal form to show net real estate rental and farming income, respectively. On the return for 2000, Urbanski also listed interest and dividend income. He did not list wages on any of the 1040 forms because Morse did not identify having received any. Urbanski's analysis concluded that Morse's taxable income during this period was $448,039 and that Morse owed $142,827 in taxes. During the time he was working on his tax forms with Urbanski, Morse tried to discuss some theories with Urbanski about reducing or avoiding tax liability, but Urbanksi "didn't want to hear about it." Morse did not file the returns that Urbanksi prepared.

Morse next contacted Joseph Saladino, the head of an organization called the Freedom and Privacy Committee, to "assist him with his tax liability." The Freedom and Privacy Committee performed the calculations and prepared income tax returns for the years 1996 through 2000, and Morse signed and mailed them to the IRS.

Unlike on the returns that Urbanski prepared, Morse did not report his farming and rental income on lines 17 and 18 as his principal sources of income on these returns. Morse instead reported his income on line 7, as "wages, salaries, tips, etc." Morse then deducted all the "wages" as "AN UNRESTRICTED CLAIM OF CLAIM FOR COMPENSATION FOR PERSONAL LABOR FOUNDED ON 26 USC SECTION 1341." In affidavits attached to each return, Morse stated that "[t]he amount being claimed [as a deduction] is compensation for personal labor that was received as repayment of a debt that was owed to Affiant." Morse reported no income tax due for four of the five years and only $968 for tax year 2000. Morse also claimed he was entitled to an aggregate net refund of $6410.

On January 24, 2003, after Morse filed his 1996-2000 tax returns, he filed a prose petition for a writ of habeas corpus in federal district court, seeking a declaration that his wages were not taxable. Saladino prepared the petition as part of the services for which Morse paid him. The government opposed the petition and filed a declaration of Susan Gudde, a paralegal at the IRS. She indicated that, according to IRS records, Morse had not filed income tax returns for the years at issue. The case was dismissed without prejudice for lack of subject matter jurisdiction. The district court sustained the government's objection to Morse's attempts to introduce any of the filings or orders from that civil action during Morse's criminal jury trial.

In September 2003, IRS Agent Bosshart sent a letter to notify Morse that she was going to conduct an examination of his returns. She also tried to schedule an appointment with him. In response, Morse sent Agent Bosshart a fax requesting an extension until November because, as Morse testified, it was harvest time. Morse also granted Saladino a power of attorney so that Saladino could speak with Agent Bosshart, but he was denied. Agent Bosshart explained at trial that the IRS does not typically grant extensions to begin an audit for the length of time that Morse had requested. Agent Bosshart attempted to contact Morse by telephone and by letter to schedule a mutually agreed upon time. She never heard from Morse again.

Ultimately, Agent Bosshart conducted an investigation without Morse's assistance, by contacting Morse's bank and individuals who had paid him.

Following its investigation, the IRS calculated that Morse owed a total of $205,237. On June 27, 2007, a grand jury issued a five-count indictment against Morse. The indictment charged that Morse willfully made and subscribed to federal income tax returns that he did not believe to be true and correct as to every material matter for five years.

On September 24, 2007, Morse filed various pretrial motions, including a Motion to Dismiss Based on Estoppel and Due Process, and a Motion to Dismiss Due to an Unsigned Indictment. After a hearing, Magistrate Judge Jeanne J. Graham filed an order denying Morse's motion for disclosure of the signed indictment and ruling on the remaining pretrial matters. She concommitantly filed a Report and Recommendation recommending denial of all of Morse's dispositive motions. On appeal, Judge Paul A. Magnuson affirmed the Magistrate Judge's order and adopted her recommendations.

On December 18, 2007, a superceding five-count indictment was handed up. On February 6, 2008, Morse filed another motion requesting disclosure of the signed superceding indictment, which the district court denied.

At trial, Morse argued that he held a good faith belief that he properly filed his tax documents. In essence, he argued that the government failed to prove that he acted willfully in making false statements to the IRS. The jury convicted him on all five counts. The district court then found that the applicable amount of potential tax loss attributable to Morse's conduct was less than $200,000 but more than $80,000. The district court sentenced him to concurrent thirty month sentences on each count, one year of supervised release on each count to run concurrently, and a special assessment of $500. Morse appeals.

II.

A.

Morse first challenges the district court's ruling to deny his motion to dismiss the indictment based on the doctrine of estoppel. He argues that in his 2003 civil action prepared by Saladino, the government claimed that Morse had not filed tax returns and therefore should not be allowed to change its position in this case to allege that Morse filed false tax returns. "We have not previously articulated the proper standard of review when reviewing a district court's application of the judicial estoppel doctrine. A majority of our sister circuits that have addressed the issue apply the abuse of discretion standard." Stallings v. Hussmann Corp., 447 F.3d 1041, 1046 (8th Cir. 2006) (citations omitted).

The doctrine of judicial estoppel "prohibits a party from taking inconsistent positions in the same or related litigation." United States v. Grap, 368 F.3d 824, 830 (8th Cir. 2004) (internal quotations and citations omitted). The Supreme Court has recognized three considerations that "typically inform the decision whether to apply the doctrine in a particular case": 1) "a party's later position must be clearly inconsistent with its earlier position"; 2) whether the party "succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and 3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001) (internal quotations and citations omitted).

While we have recognized that estoppel defenses may, at times, be asserted against the government, we have not used estoppel to bar a criminal prosecution. See Grap, 368 F.3d at 830. The Supreme Court has recognized that "the Government may not be estopped on the same terms as any other litigant" because "[w]hen the

Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined." Id. at 830-31 (quoting Heckler v. Cmty. Health Servs. of Crawford County, Inc., 467 U.S. 51, 60 (1984)). The Supreme Court has "repeatedly indicated that an estoppel will rarely work against the government . . ., and we recently stated that a private party trying to estop the government has a heavy burden to carry." Id. at 831 (internal citations omitted).

Morse has not met this heavy burden. Recognizing the traditional reluctance to allow criminal defendants to estop the government based on the conduct of its agents, we are convinced that the district court did not err in denying Morse's motion to dismiss the indictment based on the doctrine of judicial estoppel. See id. at 830-31. It is true that in response to Morse's 2003 civil action prepared by Saladino, the government claimed that Morse had not filed tax returns, and the government is now alleging instead that Morse filed false tax returns. However, we do not believe that the government's statement in the 2003 litigation was an effort to manipulate the court. The government provided a reasonable explanation for its position: Morse's tax returns were filed at the end of 2002 and had not been entered into the IRS computer system at the time the jurisdictional issue was litigated. This is not a case in which the difference is in the position a party takes in a lawsuit; the difference is the result of changing facts. Accordingly, the district court did not err in denying Morse's motion to dismiss the indictment based on the doctrine of judicial estoppel.

B.

Morse next recasts the above judicial estoppel argument as a violation of due process. He argues that submitting Susan Gudde's declaration of the unfiled tax returns and then indicting him for filing false tax returns for those same years is "outrageous and contrary to basic principles of fairness and governmental integrity."

-6-

"Outrageous government conduct that shocks the conscience can require dismissal of a criminal charge, but only if it falls within the narrow band of the most intolerable government conduct." United States v. Boone, 437 F.3d 829, 841 (8th Cir. 2006) (internal quotations omitted). "Whether particular government conduct was sufficiently outrageous to meet this standard is a question of law which we review de novo." Id. (citations omitted).

Morse cites Smith v. Groose, 205 F.3d 1045 (8th Cir. 2000), to support his argument. In Smith, we granted habeas relief to a petitioner because the prosecutor had relied upon factually inconsistent theories to obtain murder convictions in separate trials to convict two different people for the same murder. Id. at 1052-53. The appellate court found that the contradictory prosecution violated the criminal defendants' due process rights. Smith, 205 F.3d at 1052.

Morse's reliance on Smith misses the mark. Unlike Smith, this case does not involve two or more defendants being prosecuted for the same offense. See Smith, 205 F.3d at 1052. Next, Susan Gudde's declaration can be reasonably explained. Morse filed his tax returns in late 2002. Gudde's March 2003 declaration stated that the IRS database did not show that Morse had filed his returns. His returns indicate that they were routed to the agency's "Accounts Management," "Frivolous Returns" or "Exam" departments based on correspondence or controversial arguments. The government submitted an affidavit of an IRS special agent who testified that, unlike most returns, returns routed in this manner may not be processed completely. The inconsistent positions of which Morse complains can be reasonably explained and are not "outrageous" or "contrary to basic principles of fairness." See id. Accordingly, Morse's due process rights were not violated because he was not subject to contradictory prosecution.

Morse next contends that the court erred in denying his motion to dismiss the indictment, arguing that the failure to give him a signed copy of the indictment violated his due process rights. Morse had asked the government to produce a duly executed copy of the indictment for his inspection so that he could "see and personally confirm the existence of the actual charging instrument against him." The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . .." U.S. CONST. amend. V. Morse argues that this clause would be rendered meaningless if an accused cannot see and personally confirm the existence of the actual charging instrument against him.

The Federal Rules of Criminal Procedure state that indictments are to be signed by both the foreperson of the grand jury and by an attorney for the government. See Fed. R. Crim. P. 6(c) ("The foreperson . . . will sign all indictments."); Fed. R. Crim. P. 7(c)(1) ("The indictment . . . must be signed by an attorney for the government."). When considering a district court's ruling regarding a rule of criminal procedure, "we review the district court's legal conclusions de novo." United States v. Shepard, 462 F.3d 847, 861 (8th Cir. 2006) (citation omitted). The signatures on the indictment, however, are a formality, and even the lack of signatures would not render an indictment invalid. United States v. Willaman, 437 F.3d 354, 360 (3d Cir. 2006) (terming lack of signature as a technical deficiency); United States v. Irorere, 228 F.3d 816, 830-31 (7th Cir. 2000) (same).

Here, the Magistrate Judge inspected the superseding indictment filed under seal and was satisfied that it was properly signed by the foreperson and by the prosecuting attorney. The Magistrate Judge found that there was "good cause to keep the original, signed indictment sealed." The court had received documents threatening judicial officials and law enforcement personnel involved in the case. The documents referred to the judges as "BAR TERRORIST[S]" and also suggested "eye for an eye"

punishment. In another communication in September 2007, Morse reiterated the threats, confirmed his involvement in the earlier filing, and identified judicial officers in his case as guilty of sedition and treason. Thus, good cause existed to keep the indictment sealed, and the district court did not err in denying Morse's motion.

## D.

Morse next contends that the government did not prove that his conduct was willful because there was evidence of his good faith belief that he was not violating the tax laws. We review the sufficiency of the evidence to sustain a conviction de novo. United States v. Grimaldo, 214 F.3d 967, 975 (8th Cir. 2000). The standard of review concerning sufficiency of the evidence "is very strict, and a jury verdict will not be overturned lightly." United States v. Ellefson, 419 F.3d 859, 862 (8th Cir. 2005). We view the evidence in the light most favorable to the verdict, "giving the government the benefit of all reasonable inferences that may logically be drawn from the evidence." United States v. Suppenbach, 1 F.3d 679, 681-82 (8th Cir. 1993). Evidence is sufficient "if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Boesen, 491 F.3d 852, 856 (8th Cir. 2007) (citation omitted).

Morse was charged with filing false tax returns under 26 U.S.C. § 7206(1), which provides that any person who "[w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter" is guilty of a felony. Willfulness requires proof of a voluntary, intentional violation of a known legal duty. Cheek v. United States, 498 U.S. 192, 201 (1991). "The issue is whether, based on all the evidence, the [g]overnment has proved that [Morse] was aware of the duty at issue, which cannot be true if the jury credits a good-faith misunderstanding and belief submission, whether or not the claimed belief or misunderstanding is objectively reasonable." Id. at 202.

Testimony from IRS agents, a banker, farmers who rented farmland from Morse, others in the farming industry, and Morse himself, combined with the tax returns and Morse's 1999 conviction of filing false tax returns, established that Morse knowingly and significantly underreported his income on his tax returns. Importantly, the jury heard evidence that Morse knew from his 1999 conviction that he had to be truthful when he filed these five tax returns. See id. at 202. Viewing the evidence in the light most favorable to the government, the evidence shows that Morse voluntarily and intentionally violated this duty. Specifically, the jury learned that Morse was a farmer with farm income who rented out some of his land for rental income. The testimony of Morse and Urbanski provided sufficient evidence that Morse knew that he received farm and rental income and that the returns he filed did not reflect this income. The evidence showed that Urbanski prepared returns based on accurate information and that these returns showed that Morse owed substantial taxes. Morse, however, did not file these returns. Instead, he claimed to have been compensated "for personal labor" in "repayment of a debt" owed to him when he had no wages, did not work for anyone, and even was in prison in 2000 and could not have been performing labor for compensation in that year. Further, Morse also agreed that the consequence of his claim on our society would be that virtually everyone would be free of taxes. Accordingly, any rational trier of fact could have found beyond a reasonable doubt that Morse voluntarily and intentionally filed false tax returns.

E.

Morse next challenges a number of the district court's evidentiary rulings. He argues that the district court improperly excluded the following evidence that he asserts is probative because it showed his good faith that he was not violating the tax laws: (1) documents relating to Morse's civil declaratory judgment; (2) a note to Agent Bosshart, which he asserts explained that he could not meet with her because he was busy with the harvest; (3) an explanation by Patrick Lynch, a former tool and die worker who worked for the Freedom and Privacy Committee, of the IRS individual master file system; and (4) documentation of Saladino's and the Freedom

Privacy Committee's operations.[2]  The district court excluded these documents as either not relevant or lacking foundation.  "We review evidentiary rulings for abuse of discretion.  Even when an evidentiary ruling is improper, we will reverse a conviction on this basis only when the ruling affected substantial rights or had more than a slight influence on the verdict."  United States v. Gustafson, 528 F.3d 587, 590-91 (8th Cir. 2008) (citations omitted).

It was proper for the district court "to exclude evidence having no relevance or probative value with respect to willfulness."  Cheek v. United States, 498 U.S. 192, 203 (1991).  To the extent that any of the excluded documents may have been relevant, they were cumulative, and the district court did not abuse its discretion by denying their admission.  See Fed. R. Evid. 403; United States v. Willis, 277 F.3d 1026, 1033 (8th Cir. 2002).  Morse "had been permitted to explain the source of his beliefs and to introduce other exhibits on which he relied."  Id.  Specifically, Morse presented evidence that he corresponded with Saladino to assist him with his tax liability.  Morse testified that Saladino had filed the federal habeas action seeking "a determination if the tax returns were acceptable or not."  He testified that the litigation concluded without receiving a decision and that Saladino filed a second federal lawsuit in an effort to get a ruling on his returns.

Next, contrary to Morse's assertion, the district court did not exclude from evidence the letter he sent to Agent Bosshart about a potential meeting.  The exhibit was offered and received.  The district court also acted within its discretion when it refused to permit Lynch, a tool and diemaker, to interpret internal IRS records based on a lack of foundation. The district court allowed Lynch to testify about conversations he had with Saladino, Morse, and other members of the Freedom and

---

[2] Morse mentions in his brief that it was also error to exclude evidence of a letter written to the U.S. Department of Justice by a lawyer on Morse's behalf.  But, Morse does not cite to the transcript, and our review of the record does not reveal that the letter was either offered into or excluded from evidence.

Privacy Committee. Further, Morse testified and explained how he learned about the Freedom and Privacy Committee. He testified about phone calls with those associated with the Freedom and Privacy Committee and about documents he obtained, describing their theories and services. In describing one conversation he had with people at the Freedom and Privacy Committee concerning his tax situation, Morse said:

> Yeah, I told them where I got my income from. I told them I didn't want any problems, because I had a problem before, and I was kind of assured that there wouldn't be a problem. And if there was, they could handle the litigation, if there was any. And that was that.

Morse also described Saladino as the source of his "claim of right" tax returns, although Saladino himself did not testify because he exercised his Fifth Amendment right against self-incrimination. Lastly, as discussed above, the evidence of Morse's guilt was substantial, and we do not believe that the verdict would have been different had the documents been admitted. Accordingly, the district court did not err in its evidentiary rulings.

### F.

Lastly, Morse argues that the district court erred by failing to reduce tax loss calculations to exclude tax losses already assessed against him in the sentence he received in his earlier conviction. Morse argues that including the tax losses from 1996 and 1997 "punish[ed] Morse twice for the same conduct, thereby violating the Fifth Amendment constitutional prohibition against double punishment."[3] We review

---

[3]Morse also argues that the district court did not deduct all legal expenses at sentencing. This argument is without merit. The district court agreed that "the loss amount attributable to [Morse] should be less than $200,000, to reflect the legitimate legal fees [Morse] paid. The Court lowered [Morse's] offense level to a level 16 as a result of this determination." This determination is consistent with the loss calculation that Urbanski prepared on Morse's behalf to give Morse full credit for those expenses.

the application of the Guidelines to the facts de novo and factual findings underlying the calculation of the Guidelines for clear error. United States v. Gomez, 271 F.3d 779, 781 (8th Cir. 2001). The ultimate sentence is reviewed for abuse of discretion. United States v. Hayes, 518 F.3d 989, 995 (8th Cir. 2008).

"Relevant conduct which has been considered in a prior sentencing can be a basis for subsequent prosecution without violating the double jeopardy clause so long as the earlier sentence was within the statutory or legislatively authorized punishment range." United States v. Abboud, 273 F.3d 763, 766 (8th Cir. 2001). As long as the sentence previously imposed was within the authorized statutory limits for that earlier crime, enhancing a sentence for a separate crime with the same conduct does not constitute punishment for that conduct within the meaning of the Double Jeopardy Clause. Witte v. United States, 515 U.S. 389, 398-99 (1995).

Here, the district court did not err. First, in Morse's 1999 conviction, the district court added to the 1991 through 1994 tax loss approximately $83,000 in estimated unpaid taxes for the years 1996 and 1997, putting Morse at offense level 15 under the Guidelines then in effect. Morse's 1999 sentence of eighteen months was well within this range. IRS Agent Bosshart then computed a total tax loss of $205,237 for the years pertaining to this case. Using this figure, under § 2T4.1, the government argued for offense level 18 and a range of 30 to 37 months given Morse's previous criminal history. U.S. SENTENCING GUIDELINES MANUAL § 2T4.1 (2009). Urbanski prepared a tax loss analysis that Morse submitted at his sentencing. Urbanski calculated the tax loss to be $179,840. Consistent with Urbanski's analysis, the district court found the tax loss to be less than $200,000 but greater than $80,000, putting Morse at offense level 16 with a Guidelines range of 24 to 30 months. The court sentenced Morse within this range. Punishment in this case for conduct that was taken into account in Morse's 1999 sentence cannot be a violation of the Fifth Amendment because the earlier sentence was within the statutorily authorized punishment range. See Witte, 515 U.S. at 398-99. Accordingly, the district court did

not err in failing to reduce tax loss calculations to exclude tax losses already assessed against Morse.

## III.

For the reasons set forth, we affirm the judgment of the district court.

_____