2012 Ark. App. 626

**Tracy Shannon TODD, Appellant**

**v.**

**STATE of Arkansas, Appellee.**

**No. CA CR 12–42.**

Court of Appeals of Arkansas.

Nov. 7, 2012.

Rehearing Denied Dec. 12, 2012.

James Law Firm, by: William O. "Bill" James, Jr., Little Rock, Lee D. Short, for appellant.

Dustin McDaniel, Att'y Gen., by: Brad Newman, Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge.

Appellant Tracy Shannon Todd appeals his conviction for internet stalking of a child, entered after a jury trial in Crawford County Circuit Court. Appellant was arrested following a series of online chats between Van Buren Police Lieutenant Steve Weaver, representing himself as a

fifteen-year-old female named Stacy Miller, and a person who represented himself as a forty-five-year-old male named Tracy Todd. The chats took place between July 15 and 22, 2010, leading to Tracy's agreement to drive from Oklahoma to a particular location in Arkansas, where appellant was arrested. The State charged appellant with violating Ark.Code Ann. § 5–27–306 (Supp.2009), specifically accusing him of using an internet service to seduce, solicit, lure, or entice a person he believed to be age fifteen or younger in an effort to arrange a meeting for the purpose of engaging in sexual intercourse, sexually explicit conduct, or deviate sexual activity. Appellant was sentenced to twenty years in prison, and ₂he was required to complete the "RSVP" treatment program during his incarceration. He filed a timely notice of appeal from the judgment and commitment order.

On appeal, appellant asserts (1) that there is insufficient evidence to support his conviction due to lack of proof on two elements of the offense; (2) that the trial court abused its discretion in excluding his therapist's opinion testimony; (3) that the trial court abused its discretion in admitting the internet "chat logs" into evidence; (4) that the charge should have been dismissed because the government's outrageous actions deprived him of due process; and (5) that the trial court lacked the authority to impose a condition on his imprisonment. We affirm, with the exception that we modify appellant's conviction to remove the requirement that appellant complete the RSVP treatment program while incarcerated.

We must first determine whether there was sufficient evidence upon which to convict appellant of internet stalking of a child. Appellant asserts that the State failed to prove that his intention or purpose in meeting "Stacy" was to engage in sexual conduct, and further failed to prove that appellant believed Stacy to be age fifteen or younger. We disagree and affirm.

The standard of review in a test of the sufficiency of the evidence is well settled. We review the evidence in the light most favorable to the State, considering only the evidence that supports the verdict. *Terry v. State,* 366 Ark. 441, 236 S.W.3d 495 (2006). Our review includes the evidence that the appellant challenged as inadmissible. *Lee v. State,* 102 Ark. App. 23, 279 S.W.3d 496 (2008). Because a criminal defendant's state of mind or intent can seldom be proven by direct evidence, it must usually be inferred from the circumstances. *Wells v. State,* 2012 Ark. App. 276, 411 S.W.3d 211; *Spight v. State,* 101 Ark.App. 400, 278 ₃S.W.3d 599 (2008). Jurors are permitted to draw upon their common knowledge and experience to infer intent from the circumstances, and it is presumed that a person intends the natural and probable consequences of his acts. *Id.* The jury is the determiner of credibility, and it resolves questions of conflicting testimony and inconsistent evidence. *Dunn v. State,* 371 Ark. 140, 264 S.W.3d 504 (2007).

The evidence at trial focused on the testimony of Lt. Weaver, who had over twenty years of experience with the Van Buren Police Department. He explained that on the afternoon of July 15, he logged into a Yahoo "romance" chat room as part of his work with the Internet Crimes Against Children Unit. He described the profile he used, which was a fifteen-year-old girl named Stacy Miller, with a user name "StacMiller94." Lieutenant Weaver said that he would wait for someone to begin conversing with "Stacy," and a person with the user name "TSTodd27" did at 4:46 p.m.

Lieutenant Weaver explained that the department's computer system automatically archives and saves each conversation exactly as written with time and date stamps. He noted that the only omission would be decorative icons such as "smiley faces," which do not appear in the computer archives. Weaver stated that he copied and pasted the chat log into a Word document and then printed it. He confirmed that he did not change or delete anything on the chat log. The twenty-seven-page printout was entered into evidence as State Exhibit 8, over defense counsel's objection.

Weaver described the content of this chat log, which began with TSTodd27 identifying himself as a forty-five-year-old male from Oklahoma City. Stacy's first response identified herself as a fifteen-year-old female from Fort Smith. Tracy asked right away if Stacy would date someone his age, and Stacy replied that she was interested as long as they did not get caught because her mother would be angry. Tracy gave his first name, and he emailed Stacy a photograph of himself, which Lt. Weaver received and used later to visually identify appellant for purposes of arrest.

The conversation continued, and Tracy said he was an assistant store manager for a Circle K convenience store. Tracy wanted Stacy to be his girlfriend; he wanted to be her boyfriend. Stacy revealed several photographs on her profile. Weaver explained that these color photographs were of a girl taken at age fifteen or younger. Those photographs were received into evidence. By 5:33 p.m., Tracy told Stacy that he wanted to set up a time and place to meet "and just go enjoy each other." Tracy asked if Stacy liked to kiss, offered to teach her, offered to buy her a promise ring, and professed his love for her, all before 6:00 p.m. Stacy responded that she was in love with "Tracy Todd."

Tracy called Stacy "the hottest thing since they invented fire," and told her that she would "have no problem getting mine up" with "a bj or me going down on you." He said he would "teach you how I like it." Tracy said he would give her an orgasm with his oral sex skills. He also asked if she could "swallow," asked if Stacy would "let me put it inside you," and asked her if she was "interested in anal."

Just after 9:00 p.m., Tracy asked what grade Stacy would be in the coming school year, to which Stacy replied the eleventh grade. Tracy noted that "the day will come when we don't have to hide." From approximately 9:18 to 9:23 p.m., Tracy said that when they kissed, Stacy needed to "take your hand and touch me ... then start rubbing it a little ... you'll feel it grow ... I might unzip it to take it out so you can see it." Before they ended the conversation, Tracy assured Stacy he would bring protection because he did not want her to have a baby yet.

On a chat recorded mid-day on July 17, Tracy and Stacy professed their love for one another and began making a plan to meet in the near future. On the evening of July 20, Tracy told Stacy that he had to buy a new car, a purple PT Cruiser. He added that he wanted "to smell all good for my girl ... I have things to teach you." In a mid-day chat on July 21, Tracy said he would show Stacy whatever she wanted to see and that he would get a hotel room so that they could sleep together. Tracy planned to drive from Oklahoma to Arkansas to see Stacy. They agreed to meet at 1:00 p.m. the next day at a convenience store in Van Buren called "Ken's" by Sonic on Broadway Street. On the morning of July 22, Tracy told Stacy that they were going to sleep together that night, and he

reminded her that he would be driving a purple PT Cruiser.

Lieutenant Weaver said that appellant appeared at Ken's Stop and Shop at 1:10 p.m. on July 22, driving a purple PT Cruiser that had a temporary tag issued in Oklahoma. Weaver noted that appellant looked like the photograph emailed to Stacy. Weaver testified that he did not initiate the sexual nature of the conversation but waited for the other person to do so. Weaver believed it was clear that this person wanted to have sexual contact with this girl, given the highly sexual nature of the questions and suggestions.

Upon arrest, appellant stated that he knew he "messed up." After being given *Miranda* rights and agreeing to an interview, appellant gave a recorded and videoed statement to police. Both the transcribed interview and the DVD of the interview were entered into evidence. The DVD was played for the jury. In the interview, appellant gave his date of birth (indicating that he was forty-five years old), said he came from Oklahoma City and worked for Circle K there, and stated that he had been talking to the girl for "maybe a couple weeks." Appellant said that he "shouldn't have done this," and that he had "never, you know, done anything like this before." He denied having a hotel reservation, and no condoms were found upon appellant's arrest.

■ Appellant argues on appeal, as he did at trial, that the State failed to present sufficient evidence to prove (1) that appellant possessed the belief that the person chatting online was age fifteen or younger, or (2) that appellant's purpose in meeting at the convenience store was to engage in sexual activity. We disagree.

Viewing the evidence on appeal in the light most favorable to the State, the jury had sufficient evidence from the chat logs that appellant was informed that the other person was a fifteen-year-old girl who was on summer break after her sophomore year in high school. The person identified herself as a fifteen-year-old girl in the first moments of conversation. The person provided several color photographs of an obviously young girl. Appellant attempts to pinpoint moments in the chat that showed Stacy's age might be sixteen or older. This ignores our standard of review—we review only the evidence that supports the jury's verdict. *Compare Buffalo v. State,* 2010 Ark. App. 127, 374 S.W.3d 82; *Jackson v. State,* 2009 Ark.App. 466, 320 S.W.3d 13. We hold that there was sufficient evidence to support the jury's finding on this element of the offense.

■ The other aspect of appellant's sufficiency argument is that there was insufficient proof that appellant's intent upon meeting Stacy was for the purpose of sexual activity. He points to the absence of any condoms and the absence of any hotel reservation; he argues that the proof demonstrated appellant's intention as only to have a genuine relationship. We disagree with his assertion. There was proof of an ongoing, sexually explicit conversation between appellant and Stacy, appellant's plan to meet her to begin an in-person relationship, appellant's offers to teach Stacy a variety of sexual skills, and an expressed intent to sleep with but not impregnate Stacy the night of their first meeting. It is more than a reasonable inference that appellant's intention in meeting with Stacy was to engage in sexual activity with her. *See Buffalo, supra.* The trial court did not err in refusing to direct a verdict for appellant on this element because it presented a question of fact for the jury to decide.

■ Appellant's next argument on appeal is that the trial court abused its dis-

cretion in excluding the testimony of his counselor, Larry Gant, who has experience with sex offenders. Gant's proffered testimony was that he believed appellant not to have tendencies or inclinations of a pedophile but was merely vulnerable to offers of attention and affection. Appellant's attorney argued that this was relevant to appellant's purpose in meeting with Stacy that day in Arkansas. Appellant's attorney specifically disclaimed any assertion that his client lacked mental capacity. The State objected on the basis that Gant's opinion was not relevant to appellant's actual purpose on the afternoon of July 22, 2010, and further that it invaded the province of the jury to determine the ultimate issue of this trial. The trial court excluded Gant's testimony as irrelevant for the guilt phase but not for purposes of sentencing. Appellant contends that this was an abuse of discretion.

 The decision to admit or exclude evidence is reviewed for an abuse of discretion. *Laswell v. State,* 2012 Ark. 201, 404 S.W.3d 818. Expert testimony is generally tested by whether the testimony will aid the jury in understanding the evidence or in determining a fact issue. *Id.* Where the expert testimony would invade the function of the jury or where it does not help the jury, the expert testimony is not admissible. *Id.;* Ark. R. Evid. 702.

The State asserts that the jury did not need expert testimony on appellant's intentions because the chat logs spoke for themselves and because this was not an issue beyond the jury's ability to understand or beyond its ability to draw its own conclusions. The State adds that our supreme court has addressed this issue in the context of murder trials, acknowledging a split of authority in courts of this country but adopting the view that psychiatric testimony that attempts to establish a defendant's state of mind at the time of a particular crime is not admissible. *E.g., Laswell v. State, supra; Bankston v. State,* 361 Ark. 123, 205 S.W.3d 138 (2005); *Hinkston v. State,* 340 Ark. 530, 10 S.W.3d 906 (2000); *Stewart v. State,* 316 Ark. 153, 870 S.W.2d 752 (1994). We agree with the State that these cases support exclusion of Gant's testimony on the issue of appellant's mental state on July 22, 2010. Appellant has failed to demonstrate an abuse of discretion.

 At oral argument of this appeal, appellant's attorney amplified his argument to contend that Gant's expert testimony was admissible as relevant character evidence under Ark. R. Evid. 405. This argument was never brought to the trial judge for consideration, nor was a ruling ever made on the basis of Rule 405 and admissible character evidence. An appellant is bound by the arguments raised and ruled upon by the trial court, and therefore this argument is not preserved for our review. *Frye v. State,* 2009 Ark. 110, 313 S.W.3d 10.

 Appellant's next argument focuses on the admission of the chat logs into evidence. Appellant contends that the chat logs were not properly authenticated and further that the chat logs constituted inadmissible hearsay. We hold that the trial court did not abuse its discretion in admitting the chat logs.

 Authentication of a document is a condition precedent to admissibility. *Davis v. State,* 350 Ark. 22, 86 S.W.3d 872 (2002); Ark. R. Evid. 901. Authentication is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Ark. R. Evid. 901(a). One acceptable method of authentication is the testimony of a witness with knowledge that a matter is what it is claimed to be. Ark. R. Evid. 901(b)(1). Another acceptable method is

evidence of appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances. Ark. R. Evid. 901(b)(4). In this instance, Lt. Weaver verified that the chat logs were accurate and complete renderings of the conversations between Stacy and "TSTodd27." This alone was sufficient testimony by a witness with knowledge that the chat logs were authentic. *See Buffalo v. State, supra; Dirickson v. State,* 104 Ark.App. 273, 291 S.W.3d 198 (2009).

Additionally, our supreme court addressed a similar complaint in *Gulley v. State,* 2012 Ark. 368, 423 S.W.3d 569, when it addressed concerns about authentication and hearsay with regard to text messages from a cellular telephone. Mr. Gulley contended that the State failed to establish that he was the author of the text messages. In *Gulley,* the supreme court affirmed the admission of the text messages because there was sufficient circumstantial evidence to tie Mr. Gulley to the messages. There, the content of the messages was confirmed by consistent behavior by Mr. Gulley. The same is true here.

The identity of "TSTodd27" as appellant was corroborated by the accuracy of the chat content with appellant's identity and with his actions—both were named Tracy Todd; both men were forty-five years old; both lived in Oklahoma City; both worked for Circle K; both drove a new purple PT Cruiser. A photograph that looked like appellant was sent to Stacy during their chats, and appellant arrived at the agreed store in Arkansas at the agreed date and time. Appellant admitted upon arrest that he had been talking to this girl for about two weeks, that he messed up, and that he should not have done that. The *Gulley* case supports the trial court's discretionary decision to admit the chat logs as authentic.

As to hearsay, the chat logs were not hearsay of Lt. Weaver because they were not offered for the truth of Weaver's statement but instead put the conversations in context. *Dirickson, supra.* The chat logs were not hearsay as to appellant because the same corroborative evidence supports that these chat logs contained admissions of a party opponent. *See id.* We affirm on this point.

Appellant next contends that the trial court erred by not granting his motion to dismiss on the basis of governmental misconduct. Specifically, appellant argues that the State's use of pleas of love, offers of sex, and other promises motivate individuals to commit this crime, constituting a violation of due process. The trial court commented that this sounded like a defense of entrapment, but appellant denied that this was his assertion. His contention was that the State should not be able to prosecute this crime where the crime grew out of the State's outright lies and substantial enticements. *See Weaver v. State,* 339 Ark. 97, 3 S.W.3d 323 (1999) (discussing "outrageous governmental conduct" sufficient to violate the constitution and to bar prosecution versus the defense of entrapment). Dismissal due to "outrageous governmental conduct" is rarely applied and is narrowly confined to intolerable governmental conduct. *See United States v. Morse,* 613 F.3d 787 (8th Cir.2010). Review of this question of law is de novo. *Id.* After reviewing the entirety of this chat log, we hold that the State's participation in this online chat does not demonstrate outrageous conduct; it demonstrates the State providing an opportunity for criminal action.

Lastly, appellant asserts that the trial court lacked authority to impose an additional condition of his incarceration, that being participation in the RSVP pro-

gram. We agree, and the State concedes error on this issue. Requiring an inmate to participate in a special program as a condition of incarceration is an illegal sentence. *Burton v. State*, 2012 Ark. App. 452, 2012 WL 3744807; *Richie v. State*, 2009 Ark. 602, 357 S.W.3d 909. We therefore modify appellant's judgment and commitment order to remove this portion of his sentence.

Appellant's conviction is affirmed as modified.

HOOFMAN and BROWN, JJ., agree.