Cite as 2020 Ark. App. 265

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CR-19-760

|  |  |
|---|---|
| | **Opinion Delivered:** April 22, 2020 |
| RODNEY GOSHIEN<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63CR-18-928]<br><br>HONORABLE GARY ARNOLD, JUDGE<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant Rodney Goshien was found guilty by a Saline County Circuit Court jury of commercial burglary and theft of property. He was sentenced as a habitual offender to an aggregate term of thirty years' imprisonment. He appeals, contending that the circuit court abused its discretion by failing to instruct the jury that the prior videotaped statements of a witness could not be considered substantive evidence. We affirm.

On April 10, 2018, someone went into the office at Eat My Catfish in Benton, Arkansas, and stole the credit cards out of Sandra Jones's purse. The act was captured by the restaurant's surveillance system and appellant was subsequently arrested and charged with the crime. Appellant's jury trial took place on May 10, 2019. Jones testified that she is a manager at Eat My Catfish and was working in that capacity on April 10, 2018. She stated that the restaurant was busy, so she helped on the floor. She said that she left her purse in

the office while she assisted on the floor. She testified that the office is not open to the public and that even staff is not allowed in the office without permission. She stated that she did not notice that her credit cards were missing until the next morning when she attempted to make a purchase at Kroger. Jones stated that even though her wallet was still in her purse, the contents of the wallet were missing. She testified that she initially contacted her husband to ask if he had removed the credit cards and when he informed her that he had not, she went to work a began reviewing the videotaped footage. She said that the footage from April 10 showed a man go into the office, remove her wallet from the purse and place it down his pants, then go into the bathroom. The man returned to the office after leaving the bathroom and placed the wallet back into the purse. He subsequently left the restaurant. She testified that she called the police when she discovered what happened. She stated that she showed the responding officer the video footage and provided the footage when she was able to obtain a copy of it. The video was played during Jones's testimony. Jones was also shown still photos taken from the video and explained their significance to the jury. She testified that the man who entered the office and stole her credit cards was wearing a Tony Stewart shirt and was in the restaurant with three other men that day. She stated that the man seemed to make several trips back and forth; however, she said that she did not give him permission to enter the office or to take her wallet. She positively identified appellant, at trial, as the person who took her wallet from her purse on the date in question. She stated that there was no doubt in her mind that appellant was the person.

On cross-examination, Jones stated that approximately ten credit or debit cards were taken from her wallet and that there was only an attempt to use one of them on April 11.

2

She testified that on April 10, she personally handed the group of men, including appellant, cups and offered them free drinks for their long wait. She said that she spoke to them as the manager for a total of two minutes. She stated that the office door was open at the time her credit cards were stolen.

On redirect, Jones stated that she interacted with appellant and was able to get a good look at him. She stated that she even apologized to appellant for the delay of his food and offered him a free drink. She reiterated that she had no doubt in her mind that appellant was the same person seen in the video whom she served on April 10.

Bobby Scarberry, appellant's cousin, testified that he did not want to be in court and that he did not want to testify because appellant is innocent. He stated that in April 2018, appellant worked on and off for their family's roofing company making approximately $1000 a week. He admitted going to Eat My Catfish on April 10 with three other men for lunch; however, he denied that appellant was one of those men. He said that someone called him and told hm that there was a posting asking for the public's help to find the suspect in an alleged theft and commercial burglary and that he was also in the picture. He stated that this information angered him, so he went to the Benton Police Department to speak to someone. He denied remembering going into an interview room and talking to someone or what was said.

At that point, the State asked for permission to play Scarberry's interview to refresh his recollection. Appellant's attorney asked to approach and stated that if any information came in about appellant's criminal background, there would be a motion for an immediate mistrial. The video was then played. In the video, Scarberry informs Detective Richey

3

that appellant is the person seen in the footage stealing the wallet form the purse and subsequently placing the empty wallet back in its original place. Scarberry stated that he called appellant and told him to go talk to the police, but that appellant denied that he was the person in the video. Scarberry said that appellant went back and forth to the coke machine "like he was real nervous." Scarberry told Detective Richey that he told his brother, "That motherfucker was back there in the office, I bet . . . because he was back at the bathroom for about 15 minutes." Scarberry also told Detective Richey that appellant injured his hand in a fight prior to April 10 and had his hand taped up.

After the video finished playing, Scarberry stated that he still did not remember the interview. He stated that everything stated in the interview was true except for the person. He claimed to be "high that day" and "was not positive about the ID when [he] went to the police." He denied that he was trying to help appellant. Scarberry stated that he did not remember telling the prosecutor that he told appellant to turn himself in or that he positively identified appellant as the suspect. Scarberry testified that it was a mistake and that appellant was not the person on the video. He stated that the fourth person in his group that day was "Randy" and that he did not remember his last name.

At the conclusion of Scarberry's testimony, appellant's attorney asked the court for a limiting instruction to advise the jury that the video that was played during Scarberry's testimony was not to be considered as substantive evidence but was for impeachment only. The State disagreed and wanted to have Detective Richey authenticate the video so that it could be entered into evidence. The court agreed with appellant, and the video was not admitted into evidence. However, the court never gave the limiting instruction as requested

4

by appellant. The jury subsequently convicted appellant of the charges against him, and he was sentenced as a habitual offender to thirty years in the Arkansas Department of Correction. The sentencing order was filed on June 11, 2019. Appellant now brings this timely appeal.

Appellant argues that the circuit court abused its discretion by failing to instruct the jury that the prior videotaped interview of Scarberry could not be considered substantive evidence. This argument is controlled by Arkansas Rule of Evidence 105, which states that "[w]henever evidence which is admissible . . . for one (1) purpose but not admissible . . . for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." Here, the State was allowed to play the taped interview to refresh Scarberry's recollection and for no other purpose. Once appellant asked for the limiting instruction, it was the court's duty to give that instruction.[1] The court's failure to instruct the jury was a clear violation of Rule 105.[2]

Although the court erred by not giving the instruction, our inquiry does not end there. We do not reverse for an alleged error, absent a showing of prejudice[3] Here, there has been no showing of prejudice as the error in appellant's case was slight in light of the overwhelming evidence of his guilt presented at trial. The victim positively identified appellant as the person on the video and made an in-court identification also. Additionally, the jury was not only able to view the video of the crime but was shown still photos of the

---

[1]*See Hamm v. State*, 304 Ark. 214, 800 S.W.2d 711 (1990).

[2]*Id.*

[3]*Russell v. State*, 2019 Ark. App. 606, 590 S.W.3d 206.

suspect from that video. Even though Scarberry testified that appellant was not the person on the video, the jury as the sole determiner of credibility was not required to believe Scarberry.[4]

Appellant also makes two subarguments. First, appellant argues that it was error for the State to play the entire interview before the jury. Although appellant maintains that he objected to the State's playing of the entire interview, a close look at the abstract reveals no such objection. The only thing the abstract reflects is appellant's attorney asking the court if the State will be allowed to play the entire video. Next, appellant argues that it was error for the State to rely on the interview during its closing argument. However, there is no indication that appellant objected at any time during the State's closing about its use of that evidence. Because appellant failed to object, we do not reach the merits of his subarguments as they are not preserved for our review.[5]

Affirmed.

GLADWIN and WHITEAKER, JJ., agree.

*Ben Motal*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rachel Kemp*, Senior Ass't Att'y Gen., for appellee.

---

[4]*Todd v. State*, 2012 Ark. App. 626, 425 S.W.3d 25.

[5]*Montgomery v. State*, 2019 Ark. App. 376, 586 S.W.3d 188.