Cite as 2025 Ark. App. 539

# ARKANSAS COURT OF APPEALS
## DIVISION IV
#### No. CR-24-489

| | | |
|---|---|---|
| KESHONE SMITH | | Opinion Delivered November 12, 2025 |
| | APPELLANT | |
| | | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35CR-20-653 ] |
| V. | | |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE JODI RAINES DENNIS, JUDGE |
| | | AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Keshone Smith appeals his conviction of first-degree murder. On appeal, Smith argues that the circuit court erred by denying his motions to dismiss the charges against him, by denying him the right to an impartial jury, and by denying his motion for a new trial.

On December 1, 2020, the State charged Smith with capital murder, first-degree battery of a law enforcement officer, and first-degree battery[1] with enhancements for use of a firearm. In the probable-cause affidavit, the State alleged that on October 5, Pine Bluff Police Department officers Kevin Collins, Kelsey Collins, and Ralph Isaac attempted to arrest Smith on a felony warrant when Smith fired a gun, resulting in Officer Kelsey

---

[1]The State also charged Smith with a second count of first-degree battery, but that charge was later dismissed.

returning fire. The State asserted that Smith's shots killed Officer Kevin and wounded Kirel Young and that Officer Kelsey's return shots wounded Officer Isaac and Dave Wright.

On August 2, 2022, Smith moved to dismiss the charges, alleging that the prosecutor committed outrageous governmental misconduct by subpoenaing medical records. He argued that the prosecutor sought the records for the police investigation and that the prosecutor's subpoena power cannot be used for police investigations. He also argued that the prosecutor's subpoena power under Arkansas Code Annotated section 16-43-212(a) (Supp. 2025) does not extend to medical records.

On August 12, 2023, the court held a hearing on Smith's motion to dismiss. Randy Rauls testified that he is a special agent with the Arkansas State Police, and he stated that on October 14, 2020, he asked the prosecutor to subpoena the medical records for Officer Kevin, Officer Isaac, Smith, Wright, and Young. He testified that on October 15, 2020, the prosecutor issued the subpoenas, and on October 21, 2020, he received the records.

At the conclusion of the hearing, the State asserted that Smith had not suffered prejudice from issuance of the subpoenas. The State explained that it did not intend to use the records at trial and that it did not use the records during the investigation. The State did not object to excluding the records and any reference to them.

On September 14, the court denied Smith's motion to dismiss. The court found that without a showing of prejudice resulting from the alleged misuse of the subpoena power, he was not entitled to dismissal of the case.

On September 22, the court set Smith's jury trial for January 22, 2024. On November 21, Smith moved for updated information pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and he asked the State to disclose any additional witness statements obtained in its preparation for trial.

On January 22, 2024, the parties appeared for Smith's trial. During the preliminary proceedings, Smith alerted the court of his outstanding motion for additional *Brady* material. The State responded that its witnesses had "issues with their memory and remember[] things a little bit differently." The State explained that eyewitness Wright "believes the police shot first," which differed from Wright's prior statement. The State further explained that eyewitness Gates "thinks the cops shot first." The State acknowledged "they all changed that portion of their statement."

Smith then moved to dismiss the charges for prosecutorial misconduct for not disclosing the changes in the witnesses' statements until the morning of trial. He asserted that he did not have the opportunity to investigate the changed statements and secure potential favorable witnesses. The court found that Arkansas Rule of Criminal Procedure 19.2 required the State to contact the defense about the changed statements, but the court recessed to research the proper remedy.

After the recess, the State asked the court to continue the trial or to allow Smith to interview the witnesses, not dismiss the case. Smith maintained that dismissal was the appropriate remedy, and he noted that the State just informed him that Officer Kelsey had also changed his statement concerning his observations of the shooting.

The court ordered that the trial be continued, and it noted to the State, "I am embarrassed for y'all. I cannot believe in the most important case your office has ever prosecuted y'all have done this. It's just sloppy. . . . I think I have the duty and responsibility to report y'all for violating your ethics." The State agreed to provide the *Brady* material in writing, and on January 29, the State provided Smith with witnesses' statements by email.

On April 15, the court reconvened for the jury trial. During the State's voir dire of the first panel of potential jurors, Elaine Foster stated that her brother had been shot and killed in Jefferson County. She stated that sitting as juror would "stir up bad feelings" and that she would "probably [be] hard on the other side."

During the State's voir dire of the second panel, Neal Green stated that he had been stopped for speeding a "couple of times," but that would not impact his view of the police. He also acknowledged that an individual is entitled to self-defense if threatened with deadly force. He further stated that a defendant had "a perfect right not to say anything" and that he would not judge if the defendant did not testify.

Thereafter, Smith asked that Foster be struck for cause because her brother had been killed in a shooting, and she stated that she would impart those bad feelings to him. The court denied Smith's request to strike Foster for cause. Smith then used a peremptory strike on Foster. The parties later considered Green. Smith acknowledged that he had no more peremptory strikes, but he stated that he would have used a peremptory strike on Green. Green was seated as a juror.

The State subsequently presented its case. The State's evidence showed that on October 5, 2020, Officer Kevin arranged for Young to be an informant to locate Smith so that Smith could be arrested for a murder warrant from Georgia. Officers Kevin and Kelsey drove in an unmarked patrol car and followed Young in a red vehicle to a motel. Deandre Gates drove the red car with Dave Wright in the front passenger seat and Young in the back seat. Officer Isaac followed the red car in a separate unmarked patrol car.

When the red car arrived at the motel, Smith left the motel and entered the back seat of the red car. Officer Kevin and Officer Kelsey parked next to the passenger side of the red car, and Officer Isaac parked next to the driver's side of the red car. The officers then exited their vehicles with their guns drawn, and Young stood outside the rear passenger door. After the officers commanded everyone to get on the ground, shots were fired. Officer Kevin was fatally shot. Young, Wright, Smith and Officer Isaac sustained gunshot wounds. The evidence conflicted on who fired the first shots.

Young testified that law enforcement fired the first shots, and he explained that Smith had a gun and fired it after he felt threatened by the officer's shots. He further testified that he worked as an informant for Officer Kevin because Officer Kevin threatened to "plant cocaine on me with my gun." Young stated that he had not disclosed Officer Kevin's threats to law enforcement before trial.

Officer Kelsey testified that the person in the back seat of the red car fired first, and after that shot, Officer Kevin fell to the ground. He stated that he took cover behind his patrol car and then returned fire toward the red car as Officer Kevin crawled to the patrol

5

car. Officer Kelsey acknowledged that he had given a prior statement that differed from his in-court statement. He explained that he previously stated that two individuals were in the back seat of the red car, but after watching the motel security video, he saw only one person in the back seat. He testified that his mental state "wasn't good" following the incident.

The State played the footage from the motel security video that captured the shooting. The State also presented evidence that the bullets recovered from Officer Kevin's body were fired from the gun found in the back seat of the red car.

The jury found Smith guilty of first-degree murder of Officer Kevin and found that he used a firearm in the commission of the offense. However, the jury acquitted Smith of first-degree battery of a law enforcement officer and first-degree battery. Smith was sentenced to thirty years' imprisonment with a five-year enhancement for using the firearm.

After trial, on May 28, Smith moved for a new trial, and he argued that the State committed *Brady* violations when it did not disclose Young's and Officer Kelsey's complete statements from the State's trial-preparation meetings. He asserted that their trial testimony revealed new details about the shooting that he could have used in his defense. He moved for a new trial and for the court to order the prosecutor to provide its notes from trial-preparation meetings with Young, Wright, Officer Kelsey, and Officer Isaac so that he could verify the number of discovery violations by the State.

On June 27, the court entered an order denying Smith's motion. This appeal followed.

Smith first argues that the circuit court erred by denying his motion to dismiss the charges because the prosecutor illegally subpoenaed medical records for the police investigation. He asserts that a prosecutor's subpoena can be used only for the prosecutor's investigation, and he also argues that a prosecutor cannot subpoena medical records without the person's consent. He claims that the State's conduct was so outrageous that it violated due-process principles and that the only remedy for such conduct is dismissal of the case.

Dismissal due to "outrageous governmental conduct" is rarely applied and is narrowly confined to intolerable governmental conduct. *Todd v. State*, 2012 Ark. App. 626, 425 S.W.3d 25 (citing *United States v. Morse*, 613 F.3d 787 (8th Cir. 2010)). Review of this question of law is de novo. *Todd*, 2012 Ark. App. 626, 425 S.W.3d 25 (citing *Morse*, 613 F.3d 787). Further, in the absence of prejudice, we will not reverse for an alleged misuse of the prosecutor's subpoena power. *See Neal v. State*, 320 Ark. 489, 898 S.W.2d 440 (1995).

We find no error by the circuit court on this point. As the circuit court concluded, Smith does not show any prejudice resulting from alleged misuse of the prosecutor's subpoena power. The State did not reference or introduce the medical records at trial. Smith claims that the State took "advantage of knowledge gained through the medical records," but he does not explain what knowledge the State gained from the records. Given these circumstances, we hold that the circuit court did not err in denying Smith's motion to dismiss.

Smith next argues that the circuit court erred by denying his motion to dismiss for the prosecutor's flagrant and substantial *Brady* violation. He points out that the circuit court

found that the State violated Rule 19.2 when it did not disclose that eyewitnesses' statements had changed, and he claims that the State's withholding of evidence amounts to flagrant misconduct such that his conviction must be reversed and dismissed.

We again find no error by the circuit court. To establish that the State withheld evidence in violation of *Brady*, 373 U.S. 83, the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; the evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued. *Duck v. State*, 2018 Ark. 267, 555 S.W.3d 872. Further, our law is well settled that the remedy for a *Brady* violation is a new trial. *Green v. State*, 2011 Ark. 92, 380 S.W.3d 368.

In this case, because of the State's error, the court continued Smith's trial. Thus, Smith received the relief to which he is entitled. Smith cites no controlling authority that such conduct by the State warrants dismissal of the case. Accordingly, we hold that the circuit court did not err.

Smith next argues that the circuit court denied him the right to an impartial jury. Specifically, he asserts that the circuit court should have granted his for-cause challenge to juror Foster because her brother had been shot and killed in Jefferson County, and that made her biased. He argues that because the court denied his for-cause challenge, he had to use a peremptory challenge on Foster and did not have any more peremptory challenges to strike juror Green, who sat on the jury.

The supreme court has stated unequivocally that in deciding whether a defendant's right to an impartial jury has been violated, the focus should not be on a juror who was

peremptorily challenged but on the persons who actually sat on the jury. *Pickens v. State*, 301 Ark. 244, 783 S.W.2d 341 (1990) (citing *Ross v. Oklahoma*, 487 U.S. 81 (1988)); s*ee also Davis v. State*, 60 Ark. App. 179, 962 S.W.2d 815 (1998)). Thus, to preserve for appeal an argument that the circuit court erred in not excusing certain jurors for cause, the appellant must have exhausted his peremptory challenges and must show that he was later forced to accept a juror who should have been excused for cause. *Scherrer v. State*, 294 Ark. 227, 742 S.W.2d 877 (1988); *see also Green v. State*, 2013 Ark. 497, 430 S.W.3d 729. Here, Foster did not sit on the jury, and Smith did not ask to remove juror Green for cause. Thus, Smith's argument cannot be reviewed on appeal.

Smith's final argument is that the circuit court erred by denying his motion for a new trial and for the State to provide its notes from trial preparation with Young, Wright, Officer Kelsey, and Officer Isaac. Smith asserts that Young's and Officer Kelsey's trial testimony revealed new details about the shooting, and he claims that their testimony suggests that the State's notes include undisclosed details about the shooting, which would amount to additional discovery violations by the State.[2]

Smith's argument is not preserved. An issue must be presented to the circuit court at the earliest opportunity to preserve it for appeal. *Fuller v. State*, 316 Ark. 341, 872 S.W.2d 54 (1994); *Merrill v. State*, 2024 Ark. App. 575, 702 S.W.3d 420. An objection made for the

---

[2]Smith also argues that the circuit court should have granted his motion for a new trial because the State made improper statements in closing arguments. However, Smith did not raise this issue in his motion, and we do not consider an issue raised for the first time on appeal. *A.J.A. v. State*, 2019 Ark. App. 464, 588 S.W.3d 92.

first time in a motion for new trial is untimely, *Donovan v. State*, 95 Ark. App. 378, 237 S.W.3d 484 (2006), and a motion for new trial cannot be used as an avenue to raise new allegations of error that have not been raised and preserved at trial. *Wooten v. State*, 2016 Ark. 376, 502 S.W.3d 5. Here, Smith's allegations of *Brady* violations are based on Young's and Officer Kelsey's trial testimony. However, Smith did not object at trial, and he cannot use a motion for new trial to raise the issues.

Even if Smith had preserved his argument, he still cannot show an abuse of discretion by the circuit court. The matter of granting or denying a new trial lies within the sound judicial discretion of the circuit court, whose action will be reversed only upon a clear showing of abuse of that discretion or manifest prejudice to the defendant. *Buckley v. State*, 2023 Ark. App. 330, at 13, 669 S.W.3d 631, 641. Appellant had the duty of proving a *Brady* violation. *Id.* at 14, 669 S.W.3d at 641. Here, on appeal, Smith does not identify any evidence suppressed by the State. He merely offers a belief that evidence may exist. Further, as to differences in Young's and Officer Kelsey's testimony, Smith had the opportunity and availed himself of that opportunity to cross-examine them at trial. Given these circumstances, we cannot say that the circuit court abused its discretion.

Accordingly, for the reasons set forth above, we affirm Smith's first-degree-murder conviction.

Affirmed.

VIRDEN and TUCKER, JJ., agree.

*Short Law Firm*, by: *Lee D. Short*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jacob Jones*, Ass't Att'y Gen., for appellee.