2009 Ark. App. 466

**Michael E. JACKSON, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 08–1495.**

Court of Appeals of Arkansas.

June 3, 2009.

Paul Petty, Searcy, for appellant.

Dustin McDaniel, Att'y Gen., by: Karen Virginia Wallace, Ass't Att'y Gen., for appellee.

WAYMOND M. BROWN, Judge.

At a bench trial, Michael E. Jackson was convicted of internet stalking of a child and was sentenced to two years' imprisonment, followed by three years' suspended imposition of sentence. Jackson challenges the sufficiency of the evidence to support the conviction, claiming that the State failed to show that he believed that he was chatting online with a fourteen-year-old girl. He also argues that the trial court erred in admitting transcripts of the conversations between him and the police officer posing as a fourteen-year-old, contending that the conversations were inad-

missible hearsay and were not properly authenticated. We affirm.

In October 2007, Detective Brian Williams of the Conway Police Department posed as fourteen-year-old Misty Webb while using the Yahoo Instant Messenger program. The terms and conditions of the program require users to be over the age of eighteen. To circumvent this requirement, Williams listed Webb's age as 100. On October 15, 2007, Webb received a message from Jackson, who was using the name "James Smith."

During Williams's testimony at trial, the State sought to introduce transcripts of the conversations between Webb and Jackson. Jackson objected, arguing that the transcripts were inadmissible hearsay and that they were not properly authenticated. In response, Williams explained that the program had an option where one could save transcripts of specific conversations. He testified he created a folder with the suspect's name on it and saved conversations and any pictures the suspect sent in that folder. He explicitly denied altering any of the conversations.[1] Williams claimed that the transcripts were authentic because he was present when the conversations were taking place and because Jackson admitted that he was the one chatting with Webb. The court overruled Jackson's objection and admitted the transcripts into evidence.

The first communication between Webb and Jackson occurred on October 15 and 16, 2007, but there was no significant conversation. The two spoke again on the afternoon of October 17. Webb indicated that she had just returned from school. Jackson asked her if she was still in high school; Webb replied that she was in the ninth grade. He then asked Webb for a picture; he received a picture of someone

---

1. In his argument, Jackson insinuates that the police doctored the transcripts. We found nothing in the record showing this to be the case.

age-regressed to appear fourteen years old. About ten minutes later, Jackson asked Webb if she was a virgin. Webb replied that she was. She followed up by stating that she was fourteen years old. The conversation ended about ten minutes later.

Jackson contacted Webb again at 1:55 p.m. on October 29, 2007. He asked her why she was not in school, to which she replied that she was done at school at 1:45 p.m. Two minutes later, Jackson asked Webb if she performed oral sex. He then asked Webb about her parents. Webb told him that her mother was at work and that her father was in Chicago. Jackson then immediately asked Webb if she wanted to perform oral sex on him. As the conversation proceeded, Webb asked Jackson if he had ever been with a fourteen-year-old before, to which Jackson replied no. Jackson then wrote that he was thinking about whether Webb would tell someone. Jackson told Webb to meet him at the Taco Bell and that they would have oral sex in the bathroom of the Taco Bell. At 3:15, Jackson told Webb that he was walking out of the door. At that time, Williams advised other detectives that Jackson would be going to the Taco Bell. He gave officers a description of Jackson and told them that Jackson would be arriving in a white car.

Detective Mike Welsh positioned himself at a gas station near the Taco Bell. While there, he saw a white car traveling north. The driver was later identified as Jackson. When Jackson first appeared, he started to turn left into the Taco Bell, but then continued northbound. Jackson then turned into the gas station, exited the car, went inside the store, and then returned to his car. He drove around the area, but he eventually pulled into the Taco Bell parking lot, sat there for a short period of time, and then left.

Jackson returned to his computer at 4:25 to talk to Webb. The two talked until 5:02, when Welsh and other officers arrived at Jackson's home. Jackson's girlfriend answered the door, but Jackson later talked to police and admitted that he had been talking with a fourteen-year-old on the computer. Later during an interview at the Conway Police Department, Williams asked Jackson to read the conversations dated October 29, 2007, and sign the pages if they accurately depicted the conversation. Every page of that transcript is signed. While Jackson was signing the transcript pages, Williams asked Jackson if he knew Webb was fourteen. Jackson replied that he did.

At the close of the State's case, Jackson moved for dismissal. He reasserted his objections to the admissibility of the transcript. He also argued that the State failed to show that he was attempting to solicit a child fifteen years of age or younger into a meeting for the purposes of sex. The court denied his motion. Jackson then testified in his own defense. At the conclusion of Jackson's testimony, the court stated that it was denying Jackson's motions again. After taking a few days to consider the case, the court found Jackson guilty of internet stalking of a child. It sentenced him to two years in the Arkansas Department of Correction, followed by three years' suspended imposition of sentence.

First, Jackson challenges the sufficiency of the evidence to support the conviction. When considering a challenge to the sufficiency of the evidence, we consider the evidence in the light most favorable to the State, considering only the evidence in favor of the guilty verdict, and affirm if the conviction is supported by substantial evidence. *Mitchem v. State*, 96 Ark.App. 78, 238 S.W.3d 623 (2006). Substantial evidence is evidence forceful

enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Baughman v. State,* 353 Ark. 1, 110 S.W.3d 740 (2003). Circumstantial evidence may constitute sufficient evidence to support a conviction, but it must exclude every other reasonable hypothesis other than the guilt of the accused. *Whitt v. State,* 365 Ark. 580, 232 S.W.3d 459 (2006). The question of whether the circumstantial evidence excludes every other reasonable hypothesis consistent with innocence is for the trier of fact to decide. *Id.*

Under Arkansas Code Annotated section 5–27–306(a)(2)(C) (Supp.2007), a person commits internet stalking of a child if the person being twenty-one years of age or older knowingly uses an internet service to seduce, solicit, lure, or entice an individual that the person believes to be fifteen years of age or younger in an effort to arrange a meeting with the individual for the purpose of engaging in deviate sexual activity. Internet stalking of a child is a Class B felony if the person attempts to arrange a meeting with an individual that the person believes to be fifteen years of age or younger, even if a meeting with the individual never takes place. Ark.Code Ann. § 5–27–306(b)(1).

A criminal defendant's intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *Gikonyo v. State,* 102 Ark.App. 223, 283 S.W.3d 631 (2008). Because intent cannot be proven by direct evidence, the fact finder is allowed to draw upon common knowledge and experience to infer it from the circumstances. *Id.* Because of the difficulty in ascertaining a defendant's intent or state of mind, a presumption exists that a person intends the natural and probable consequences of his or her acts. *Id.* The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

Jackson argues that the State presented insufficient evidence showing that he believed that he was talking to someone fifteen years of age or under. He argues that the evidence only shows that Webb identified her age once, on October 17, 2007, and that this page of the transcript did not contain his signature. He also relies on Yahoo's policy requiring users of its instant-messaging program to be at least eighteen years of age.

The evidence presented by the State is sufficient to show that Jackson believed that he was talking to a fourteen-year-old girl. During the conversation on October 17, 2007, Jackson asked Webb if she was still in high school, to which Webb replied that she was in the ninth grade. On October 29, 2007, Jackson asked Webb why she was not at school, which showed that he believed Webb to be a ninth grader, not an adult. He also asked Webb about her parents. When Webb asked Jackson if he had ever been with a fourteen-year-old girl, he replied no. When the two were making arrangements, Jackson was concerned that Webb might get him in trouble. Finally, when questioned by police, Jackson admitted that he was talking to a fourteen-year-old on the internet and that it was wrong. Accordingly, we affirm on this point.

Jackson also challenges the admissibility of the transcript of the conversations between him and Webb. He contends that the transcripts were inadmissible hearsay and that they were not properly authenticated. The admissibility of the transcripts is reviewed under the abuse-of-discretion standard. *See Brunson v. State,* 368 Ark. 313, 245 S.W.3d 132 (2006).

Proof of authenticity as a condition precedent to the admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Ark. R. Evid. 901(a). Authenticity may be satisfied by testimony of a witness with knowledge that the matter is what it is claimed to be. Ark. R. Evid. 901(b)(1). To prove authenticity of evidence, the State must demonstrate a reasonable probability that the evidence has not been altered in any significant manner. *Garner v. State*, 355 Ark. 82, 131 S.W.3d 734 (2003). The fact that a party proponent supplied the authentication does not go to the admissibility of the document, although it may go to the weight of the evidence. *McDermott v. Strauss*, 283 Ark. 444, 678 S.W.2d 334 (1984).

Jackson cites several cases in support of his argument that the transcripts were not properly authenticated. Most of the cases are irrelevant, as they go to the hearsay issue,[2] not the authentication issue. The only precedent worth discussing is *St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F.Supp.2d 773, 774–75 (S.D.Tex.1999), where the district court discussed the admissibility of an unidentified piece of evidence from the internet:

> Plaintiff's electronic "evidence" is totally insufficient to withstand Defendant's Motion to Dismiss. While some look to the Internet as an innovative vehicle for communication, the Court continues to warily and wearily view it largely as one large catalyst for rumor, innuendo, and misinformation. So as to not mince words, the Court reiterates that this so-called Web provides no way of verifying the authenticity of the alleged contentions that Plaintiff wishes to rely upon in his Response to Defen-

dant's Motion. There is no way Plaintiff can overcome the presumption that the information he discovered on the Internet is inherently untrustworthy. Anyone can put anything on the Internet. No web-site is monitored for accuracy and nothing contained therein is under oath or even subject to independent verification absent underlying documentation. Moreover, the Court holds no illusions that hackers can adulterate the content on any web-site from any location at any time. For these reasons, any evidence procured off the Internet is adequate for almost nothing, even under the most liberal interpretation of the hearsay exception rules found in Fed. R.Civ.P. 807.

The present case is distinguishable from *St. Clair*. There, the court was commenting on a piece of evidence authored by an unknown source taken from an unidentified place on the internet. In this case, the evidence in question was produced by the detective and the defendant, as evidenced by Williams's testimony and Jackson's signature on a portion of the transcript. The authentication problems with a random page on the internet are absent when the parties who produced the document are present in court. To have the chat room transcripts admitted, the State needed only demonstrate a reasonable probability that the evidence had not been altered in any significant manner. Williams's testimony and Jackson's signature on the October 29 transcript satisfied that burden.

Jackson also argues that the statements were inadmissible hearsay; however, we rejected a similar argument earlier this year. In another internet-stalking case, *Dirickson v. State*, 104 Ark.

---

2. To the extent that Jackson makes a hearsay argument, the precedents are irrelevant because those precedents discuss the admissibility of the evidence in question under the business-records exception to the hearsay rule, which is inapplicable to this case.

App. 273, 291 S.W.3d 198 (2009), the appellant sought to exclude transcripts similar to those in this case. With respect to the statements made by the appellant, we held that the statements were admissions by a party-opponent and were not hearsay (citing Ark. R. Evid. 801(c)). As for the officer's statements, we held that they were not hearsay because they were admitted to put the conversation into context, not to prove the truth of the matters asserted. As we did in *Dirickson,* we reject Jackson's hearsay arguments.

The court did not abuse its discretion in admitting the chat room transcripts. We affirm on this point as well.

Affirmed.

VAUGHT, C.J., and KINARD, J., agree.